1  Stephen M. Harris (State Bar No. 110626)
   smh@kpclegal.com
2  KNAPP, PETERSEN & CLARKE
3  550 North Brand Boulevard, Suite 1500
   Glendale, California 91203-1922
4  Telephone:  (818) 547-5000
5  Facsimile:  (818) 547-5329

6
   Attorneys for Plaintiffs
7  STEVEN C. BRUCE and NORMAN T. WESLEY,
8  JR., individually and on behalf of a class of
   similarly situated individuals
9              UNITED STATES DISTRICT COURT

10     CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11
12 STEVEN C. BRUCE, and NORMAN T.        ) NO.   CV09-6588 CAS(RZx)
   WESLEY, JR., individually and on behalf )
13 of a class of similarly situated individuals, ) Date:            January 11, 2010
                                          ) Time:             10:00 a.m.
14                                        ) Ctrm:                        5
             Plaintiffs,                  )
15                                        ) Assigned for All Purposes To:
       v.                                 ) Judge:       Christina A. Snyder -
16                                        ) Courtroom 5
                                          ) Date Action Filed:September 10, 2009
17 HARLEY-DAVIDSON, INC., and             ) Trial Date:                  None
   HARLEY DAVIDSON MOTOR                  )
18 COMPANY, INC.,                         ) **MEMORANDUM OF POINTS**
                                          ) **AND AUTHORITIES IN**
19                                        ) **OPPOSITION TO MOTION TO**
             Defendants.                  ) **DISMISS**
20                                        )
                                          )
21 _____ )
22
23
24
25
26
27
28

KNAPP,
PETERSEN
& CLARKE

731112.1  08000/00917

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................ iii

MEMORANDUM OF POINTS AND AUTHORITIES ................................... 1

I.    INTRODUCTION .................................................................................. 1

II.   STATEMENT OF FACTS ..................................................................... 2

III.  LEGAL STANDARD ............................................................................ 4

IV.   ARGUMENT ......................................................................................... 5

    A.    Plaintiffs Sufficiently Plead a California Consumers Legal Remedies Act Violation .................................................................. 5

        1.    The facts concealed by Harley-Davidson were material ................................................................................... 7

        2.    Harley-Davidson was under a duty to disclose the Harley Wobble to Plaintiffs and Class Members ................ 9

            a.    The Harley-Davidson Wobble was a Material Fact within Harley's Exclusive Knowledge ................. 10

            b.    Plaintiffs Allege That Harley-Davidson actively concealed the Harley Wobble ............................ 12

    B.    Plaintiffs' Claims are not Barred by the Economic Loss Rule ............................................................................................ 13

    C.    Harley-Davidson Failed to Adequately Comply with the Requirements of Cal. Civ. Code § 1782(c) .............................. 14

    D.    Harley-Davidson's Warranty is Unconscionable because it Forces Plaintiffs to Choose between Riding an Unsafe Vehicle and Voiding their Warranty ............................................. 16

        1.    Plaintiffs have standing to bring an Unconscionablity Claim under the CLRA ............................... 16

        2.    Plaintiffs sufficiently plead unconscionability of the warranty provision ................................................... 17

    E.    Plaintiffs Adequately Plead A Violation Of The California Unfair Competition Law Provisions .................................. 19

        1.    Harley-Davidson engaged in illegal practices ................ 19

        2.    Harley-Davidson Engaged in Fraudulent Conduct ........... 19

        3.    Harley-Davidson Engaged in Unfair Practices ................ 20

-i-

## **TABLE OF CONTENTS (cont.)**

**Page**

F.   Harley-Davidson Cannot Avoid Liability by Claiming Plaintiffs' Transactions were with Authorized Dealers, not Harley ...............................................................................................21

G.   Plaintiffs Sufficiently Plead Their Fraud Based Claims Because Rule 9(b)'s Specificity Requirement is Less Stringently Applied in a Claim of Fraud by Omission ........................22

H.   Harley-Davidson Relies on Mistaken Case Law to Create a Vertical Privity Requirement under the Song-Beverly Act ................24

V.   CONCLUSION...............................................................................25

-ii-

731112.1  08000/00917

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A&M Produce Co. v. FMC Corp.*,
  135 Cal. App. 3d 473 (1982) ................................................17

*Amendariz v. Fdn. Health Psycare Svcs., Inc.*,
  24 Cal. 4th 83 (2000) ................................................18

*Anunziato v. e-Machines*,
  402 F. Supp. 2d 1135 (2005) ................................................24

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) ................................................4

*Atkinson v. Elk Corp. of Texas*,
  142 Cal. App. 4th 212 (2006) ................................................25

*Baggett v. Hewlett-Packard Co.*,
  582 F. Supp. 2d 1261 (C.D. Cal. 2007) ................................................5

*Bardin v. Daimler-Chrysler Corp.*,
  136 Cal. App. 4th 1255 (2006) ................................................5, 6, 7

*Barnuhouse v. City of Pinole*,
  133 Cal. App. 3d 171 (1982) ................................................21

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................4

*Busian v. DiamlerChrysler Corp.*,
  411 F. Supp. 2d 614 (M.D.N.C. 2006) ................................................18, 19

*Carlson v. General Motors Corp.*,
  883 F.2d 287 (4th Cir. 1989) ................................................18, 19

*Cartwright v. Viking Industries*,
  249 F.R.D. 351 (E.D. Cal. 2008) ................................................25

*Cel-Tech Communications v. L.A. Cellular Telephone Co.*,
  20 Cal. 4th 163 (1999) ................................................19

-iii-

## TABLE OF AUTHORITIES (cont.)

Page(s)

*Chamberlan v. Ford Motor Co.,*
    369 F. Supp. 2d 1138 (N.D. Cal. 2005)......................................................21

*Cirulli v. Hyundai Motor Co.,*
    2009 WL 4288367 (2009) ..................................................................6, 9

*Clemens v. DaimlerChrysler Corp.,*
    534 F.3d 1017 (9th Cir. 2008) ...............................................................20

*Daugherty v. American Honda Motor Co., Inc.,*
    144 Cal. App. 4th 824 (2006) ........................................5, 6, 7, 13, 19

*Falk v. General Motors Corp.,*
    496 F. Supp. 2d 1088 (N.D. Cal. 2007).... 5, 6, 7, 8, 9, 10, 11, 12, 19, 20, 22, 23, 25

*Flores v. Transamerica Homefirst, Inc.,*
    93 Cal. App. 4th 846 (2001) ...........................................................18, 19

*Funk v. Sperry Corp.,*
    842 F.2d 1129 (9th Cir. 1988) ...............................................................10

*Glover v. BIC Corp.,*
    6 F.3d 1318 (9th Cir. 1993) ....................................................................9

*Gonzalez v. Drew Industries, Inc.,*
    2007 U.S. Dist. LEXIS 35952 (C.D. Cal. 2007) ...................................24

*Gusse v. Damon Corp.,*
    470 F. Supp. 2d 1110 (C.D. Cal. 2007)...............................................24

*Hirsch v. Bank of Am.,*
    107 Cal. App. 4th 708 (2003) ..............................................................25

*In re Apple & AT&TM Antitrust Litig.,*
    596 F. Supp. 2d 1288 (N.D. Cal. 2008)......................................6, 22, 23

*In re Gilead Scis. Sec. Litig.,*
    536 F. 3d 1049 (9th Cir. 2008) ...............................................................4

*In re GlenFed, Inc. Sec. Litig,*
    42 F.3d 1541 (9th Cir. 1994) *(en banc)*................................................22

-iv-

# TABLE OF AUTHORITIES (cont.)

**Page(s)**

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009) .................................................................12, 19

*In Re: OnStar Contract Litig.,*
    600 F. Supp. 2d. 861 (E.D. Mich. 2009) .............................6, 12, 21

*Inter-Mark USA, Inc. v. Intuit, Inc.,*
    2008 WL 552482 (N.D. Cal. Feb. 27, 2008) .................................13

*Kagan v. Gibraltar Savings and Loan Ass'n.,*
    35 Cal. 3d 582 (1984) ................................................................14, 15

*LiMandri v. Judkins,*
    52 Cal. App. 4th 326, 337 (1997) ....................................................10

*Linear Technology Corp. v. Applied Materials, Inc.,*
    152 Cal. App. 4th 115 (2007) ..........................................................20

*Marsikian v. Mercedes-Benz USA, LLC,*
    No. 08-04876 AHM (C.D. Cal. May 4, 2009).........................7, 8, 23

*McKell v. Washington Mutual, Inc.,*
    142 Cal. App. 4th 1457 (2006) ........................................................20

*Mexia v. Rinker Boat Co.,*
    174 Cal. App. 4th 1297 (2009) ........................................................24

*Meyer v. Sprint Spectrum L.P.,*
    45 Cal. 4th 634 (2009) .......................................................14, 16, 17

*Morgan v. AT&T Wireless Services,*
    177 Cal. App. 4th 1235 (Sept. 23, 2009) ........................................15

*Mourning v. Smithkline Beecham Corp.,*
    2009 WL 733873 (N.D. Cal. March 17, 2009)................................21

*Oestreicher v. Alienware Corp.,*
    544 F. Supp. 2d 964 (N.D. Cal. 2008)..........................................6, 7

*Osborne v. Subaru of America,*
    198 Cal. App. 3d 646 (1988) ...........................................................24

-v-

## TABLE OF AUTHORITIES (cont.)

**Page(s)**

*Parkinson v. Hyundai Motor America,*
    2008 WL 5233200 (C.D. Cal. Dec. 12, 2008)..................................6

*Rush v. Whirlpool Corp.,*
    2008 WL 509562, at *4 (W.D. Ark. Feb. 22, 2008) ....................6, 11

*Sanchez v. WalMart Stores, Inc.,*
    2008 WL 3272101 (E.D. Cal. Aug. 6, 2008)..........................9, 14

*Saunders v. Superior Court,*
    27 Cal. App. 4th 832 (1994) ...........................................19

*Seely v. White Motor, Co.,*
    63 Cal. 2d 9 (1965) ....................................................13

*Shapiro v. Sutherland,*
    64 Cal. App. 4th 1534 (1998) .........................................10

*Shein v. Canon U.S.A., Inc.,*
    2009 WL 1774287 (C.D. Cal. 2009) ..................................25

*Shein v. Canon U.S.A., Inc.,*
    2009 WL 3109721 (C.D. Cal. Sept. 22, 2009) .........................15

*Shin v. BMW of North America,*
    2009 WL 2163509 (C.D. Cal. July 16, 2009)...........................21

*State of New York v. General Motors Corp.,*
    466 N.Y.S.2d 124 (N.Y. Sup. Ct. 1983)...........................10, 11

*Stern v. AT&T Mobility Corp.,*
    2008 WL 4382796 (C.D. Cal. Aug. 22, 2008) ..........................8, 9

*Stickrath v. Globalstar, Inc.,*
    2008 WL 344209 (N.D. Cal. Feb. 6, 2008)....................6, 8, 12, 13

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) ..........................................23

*Trew v. Volvo Cars of No. Am. LLC,*
    2006 WL 306904 (E.D. Cal. Feb. 8, 2006) ............................8, 9

731112.1  08000/00917

## <u>TABLE OF AUTHORITIES (cont.)</u>

**Page(s)**

*U.S. v. City of Redwood City,*
   640 F.2d 963 (9th Cir. 1981) ........................................................4

*Varwig v. Anderson-Behel Porche/Audi, Inc.,*
   74 Cal. App. 3d 578 (1977) .........................................................22

*Williams v. Gerber Products Co.,*
   523 F.3d 934 (9th Cir. 2008) ......................................................20

*Windsor Assoc., Inc. v. Greenfeld,*
   564 F. Supp. 273 (D.C. Md. 1983) ................................................5

*Wolph v. Acer America Corp,*
   2009 WL 2969467 (N.D. Cal. Sept. 14, 2009)..............................11


**STATUTES**

Bus. & Prof. Code
   § 17200....................................................................................13, 19

Cal. Civ. Code
   §1760..........................................................................................13

   § 1770(a) ....................................................................................13

   § 1770(a)(5) ...............................................................................19

   § 1770 (7) ...................................................................................19

   § 1770 (9) ...................................................................................19

   § 1770(a)(19) .............................................................................16

   § 1780.........................................................................................14

   § 1780(b).....................................................................................15

   § 1780(c).....................................................................................15

   § 1782.........................................................................................14

731112.1  08000/00917

## <u>TABLE OF AUTHORITIES (cont.)</u>

**Page(s)**

§1782(b)..................................................................................................14

§ 1782(c)................................................................................................14

§ 1795....................................................................................................24

Uniform Commercial Code
   § 2314...............................................................................................24, 25

Federal Rule of Civil Procedure
   Rule 12(b) ..........................................................................................4

Rule 8(a), 9(b), and 12(b)(6)................................................................1

Rule 9(b) ..............................................................................................5

Rule 8(a) ..............................................................................................5

Rule 9(b) ..............................................................................................22, 23

Rule 12(b)(6)........................................................................................4

731112.1  08000/00917

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Defendants' (Harley Davidson, Inc. and Harley Davidson Motor Co., Inc. ("Defendants," "Harley-Davidson," or "Harley") Motion to Dismiss the First Amended Complaint ("MTD") is littered with misstatements of the law, inapposite case law, and disingenuous characterizations of Plaintiffs' allegations, all designed to obscure a very simple point: Harley-Davidson knew about its vehicles' safety defects and failed to disclose that knowledge to its customers. Harley's motion reads and makes reference to cases as though this were a strict liability or warranty case. With the exception of one cause of action—it is not. The CLRA and UCL transcend the common law of warranty and strict liability. Indeed, California passed the CLRA and the UCL in large part because traditional warranty and tort doctrines did not provide consumers with sufficient legal remedies.

This lawsuit involves neither difficult legal theories nor complex facts. Rather, this lawsuit is the product of an all-too-common scenario: an automaker decided it would be easier and cheaper to conceal a widespread safety defect than it would be to announce its existence and fix it. The law, however, is clear: when a manufacturer knows that its product is defectively designed and will not perform as expected in a safe manner, the manufacturer has two choices: (1) refrain from selling the product until the defects are fixed; or (2) sell the defective product after disclosing the defect and its implications to prospective buyers so they can make an informed purchase decision.

As such, Plaintiffs Steven C. Bruce and Norman T. Wesley ("Plaintiffs") satisfy the requirements of Federal Rules 8(a), 9(b), and 12(b)(6) by alleging sufficient fact that give rise to violations of the California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), the Song-Beverly Act, Fraud by Omission, and Unjust Enrichment.

**KNAPP, PETERSEN & CLARKE**

-1-

## II.

## STATEMENT OF FACTS

Plaintiffs allege that beginning in 2002, if not before, Defendants manufactured and sold to California consumers Harley-Davidson vehicles from certain model years ("Class Vehicles") that Harley knew had a design flaw and/or defect. The defect causes severe wobbling, weaving, and/or instability, often at higher (*i.e.*, highway) speeds usually (though not always) beginning at about 55-65 MPH, and/or when making sweeping turns (commonly referred to by riders as the "Harley Wobble"). (First Amended Complaint ("FAC") ¶¶ 1-2 and 4.)   The design flaw contained in the Class Vehicles includes but is not limited to a defect in the design and/or manufacture of the their rubber-cushioned mount system. (*Id.* ¶ 4.)

The Harley Wobble occurs when the Class Vehicles are driven within their normal or expected range of operation, the upper limit of which is 80 MPH or more. (*Id.* ¶¶ 6 & 88.) Indeed, according to the Owner's Manual, the "break-in speed" for the Class Vehicles "5th gear" does not even begin until "80 MPH." (*Id.* ¶ 6.)

The Harley Wobble is a safety-related defect that is unreasonably dangerous because it can unexpectedly cause riders to lose control of the Class Vehicles, contributing to accidents and exposing riders and their passengers and others who share the road with them to serious risk of injury and death. (*Id.* ¶¶ 13-14 and 54.) In fact, hundreds, if not thousands, of accidents have already occurred due to the Harley Wobble. (*Id.* ¶¶ 4, 48 & 54.)   Indeed, all state agencies regulating motor vehicles recommend that riders immediately pull over to the side of the road to fix the problem when they experience a wobble at any speed. (*Id.* ¶ 42.)

Complaints filed by consumers with NHTSA and posted on the Internet also demonstrate how widespread the defect is and how it manifests itself without warning. (*Id.* ¶ 53.) Harley-Davidson has also been made fully aware of the defect contained in the Class Vehicles by customer complaints to Harley-Davidson directly and through its dealers, pre-release testing data and other internal records,

KNAPP, PETERSEN & CLARKE

-2-

1  personal injury lawsuits and settlements involving riders who were severely

2  injured, among other sources of aggregate information about the problem. (*Id.* ¶¶

3  55 and 61.)  Despite notice of the defect, Harley-Davidson has not recalled the

4  Class Vehicles to repair the defect, offered its customers a suitable repair or

5  replacement free of charge or offered to reimburse its customers. (*Id.* ¶ 12.)

6      In the face of Harley-Davidson's failure to acknowledge—let alone repair—

7  this defect, Harley-Davidson enthusiasts have developed several safety kits that are

8  available at a cost of approximately $400 through third-party repair facilities. (*Id.*

9  ¶¶ 47-51.)  *Cycle World* magazine, a motorcycle publication, after testing one of the

10  aftermarket safety kits and finding it to be remarkably effective, even asked: "Why

11  didn't Harley do this?"  (*Id.* ¶¶ 51& 8-11.)

12      Whether or not Harley has finally resolved the Harley Wobble for the 2009

13  model year vehicles,[1] it has failed to do the same for the owners and lessees of the

14  Class Vehicles—*even though it knew of possible available fixes.* (*Id.* ¶¶ 47-52.)  In

15  fact, Harley even discourages owners and lessees of the Class Vehicles from adding

16  the aftermarket safety kits by voiding the manufacturer's express warranty if they

17  do.  (*Id.* ¶¶ 20, 50, 81-82.)[2]

18      At all times Harley-Davidson knew that the Class Vehicles contain a safety

19  defect that can cause severe wobbling, weaving, and/or instability when driven

20  within their normal and/or expected range of operation, but failed to disclose and

21  actively concealed this fact from Plaintiffs and Class Members at the time of

22  purchase or lease and thereafter.  (*Id.* ¶¶ 4-6, 43-44, 64-66.)  Plaintiffs and Class

23  Members reasonably expected that their motorcycles would not experience the

24  Harley Wobble when being driven within their normal and/or expected range of

---

25  [1] On information and belief, Harley-Davidson redesigned the vehicles in 2009, in

26  part to remedy the Harley Wobble.  (FAC ¶ 52.)

27  [2] For example, Bruce has not yet installed the aftermarket kit because it can void his

28  express warranty.  (FAC ¶ 20.)

KNAPP,
PETERSEN
& CLARKE

-3-

1  operation. (*Id.* ¶ 88.)  Plaintiffs and reasonable consumers further expected and

2  assumed that Harley would not sell vehicles with known safety defects, such as the

3  Harley Wobble, and would disclose any such defect to its customers when it learns

4  of the defect. (*Id.* ¶ 45.)  Had Plaintiffs and other Class Members at the time of

5  purchase or lease known about the Harley Wobble, they would not have bought or

6  leased the Class Vehicles, would have paid less for them, or would have purchased

7  a different vehicle.  (*Id.* ¶¶ 14, 46 & 84-90.)  Harley has also caused Class

8  Vehicles' owners and leaseholders to incur costs related to remedying this design

9  flaw and/or defect, whereby Class Members are forced to purchase aftermarket

10 safety kits that will void their warranty. (*Id.* ¶¶ 12, 20, 25, 49 & 81.)  Moreover, as

11 a result of the defect, the value of the Class Vehicles has diminished, including

12 without limitation, their re-sale value.  (*Id.* ¶ 60.)

### III.

### LEGAL STANDARD

15      In evaluating Harley's motion to dismiss under the standard imposed by

16 Federal Rule of Civil Procedure 12(b), the allegations of Plaintiffs' Complaint must

17 be accepted as true and construed in the light most favorable to plaintiffs. *In re*

18 *Gilead Scis. Sec. Litig.*, 536 F. 3d 1049, 1055 (9th Cir. 2008).  Harley's motion

19 should be granted only if the Court finds that Plaintiffs have not pled "enough facts

20 to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

21 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads

22 factual content that allows the court to draw the reasonable inference that the

23 defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

24 1949 (2009).  For these reasons, it is only under extraordinary circumstances that

25 dismissal is proper under Rule 12(b)(6). *U.S. v. City of Redwood City*, 640 F.2d

26 963, 966 (9th Cir. 1981); *see Bell Atl.*, 550 U.S. 544 ("[A] well-pleaded complaint

27 may proceed even if it strikes a savvy judge that actual proof of those facts is

28 improbable," and "that a recovery is very remote and unlikely.").

KNAPP,
PETERSEN
& CLARKE

-4-

1   Rule 9(b) of the Federal Rules of Civil Procedure also requires a party to
2   "state with particularity the circumstances constituting fraud or mistake."  The
3   requirement of pleading fraud with particularity, however, must be interpreted in
4   light of Rule 8(a) requiring only notice pleading.  "In balancing these two policies,
5   the most basic consideration in making a judgment as to the sufficiency of a
6   pleading is the determination of how much detail is necessary to give adequate
7   notice to an adverse party and enable him to prepare an adverse pleading."
8   *Windsor Assoc., Inc. v. Greenfeld*, 564 F. Supp. 273, 280 (D.C. Md. 1983).

9   Claims based on an omission or concealment "can succeed without the same
10   level of specificity required by a normal fraud claim."  *Baggett v. Hewlett-Packard
11   Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007).  This is because a plaintiff
12   pursuing an omissions-based claim will "not be able to specify the time, place, and
13   specific content of an omission as precisely as would a plaintiff in a false
14   representation claim."  *Id.* (*citing Falk v. General Motors Corp.*, 496 F. Supp. 2d
15   1088, 1098-99 (N.D. Cal. 2007)).

16                                        **IV.**
17                                  **ARGUMENT**
18   **A.    Plaintiffs Sufficiently Plead a California Consumers Legal Remedies Act**
19          **Violation**

20   In support of its motion to dismiss, Harley-Davidson primarily relies on two
21   California Court of Appeal cases, *Daugherty v. American Honda Motor Co., Inc.*,
22   144 Cal. App. 4th 824 (2006), and *Bardin v. Daimler-Chrysler Corp.*, 136 Cal. App.
23   4th 1255 (2006), both of which undermine Defendants' arguments.  In both
24   *Daugherty* and *Bardin*, the plaintiffs failed to allege a safety defect, or that
25   consumers reasonably expected something different than they received.  Neither of
26   these cases applies here, where Harley has failed to disclose a known safety concern
27   and Plaintiffs' expectations are different from what they received.  Indeed, in
28   granting motions to dismiss, both *Bardin* and *Daugherty* emphasize the absence of

KNAPP,
PETERSEN
& CLARKE

-5-

allegations of safety defects, *Bardin*, 136 Cal. App. 4th at 1275 ("Plaintiffs did not allege any…safety concerns . . . ."); *Daugherty*, 144 Cal. App. 4th at 836 ("The complaint is devoid of factual allegations showing . . . any safety concerns posed by the defect."), and a consumer's expectation that a manufacturer would disclose them, *Daugherty*, 144 Cal. App. 4th at 838 ("The only expectation buyers could have had about the engine was that it would function properly for the length of Honda's express warranty, and it did."); *Bardin*, 136 Cal. App. 4th at 1275 ("[C]omplaint did not allege . . . members of the public had any expectation or made any assumptions that DCC's exhaust manifolds would be made from cast iron, as opposed to tubular steel . . . .").

In contrast, the court in *Falk*, 496 F. Supp. 2d at 1100, distinguishing both *Daugherty* and *Bardin* under the same analysis (but different facts) applicable here, denied a motion to dismiss, finding that "GM knew and concealed that its speedometers were defective and likely to fail far more often than expected by the consuming public." The court agreed with plaintiffs that "a reasonable consumer would expect a speedometer to last for the life of a vehicle," and that "a faulty speedometer easily would lead to traveling at unsafe speeds and moving-violation penalties." *Id.* The *Falk* court even noted: "Since the *Bardin* and *Daugherty* plaintiffs alleged no consumer expectations about the matter in question, it could not be material." The *Falk* court found particularly significant the fact that plaintiffs in *Bardin* and *Daugherty* had failed to allege safety defects.[3]

---

[3] Many courts have embraced *Falk*'s analysis. *See, e.g.*, *In Re: OnStar Contract Litig.*, 600 F. Supp. 2d. 861, 871-72 (E.D. Mich. 2009); *Parkinson v. Hyundai Motor America*, 2008 WL 5233200, at **5-6 (C.D. Cal. Dec. 12, 2008); *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1310-12 (N.D. Cal. 2008); *Rush v. Whirlpool Corp.*, 2008 WL 509562, at *4 (W.D. Ark. Feb. 22, 2008); *Stickrath v. Globalstar, Inc.*, 2008 WL 344209, at *3 (N.D. Cal. Feb. 6, 2008); *Cirulli v. Hyundai Motor Co.*, 2009 WL 4288367, at **5-6 (C.D. Cal., Nov. 9, 2009). Another case relied on by Harley, *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 970-71 (N.D. Cal. 2008), also applies the analysis set forth by *Falk*.  In applying (Continued...)

1    Here, the Complaint is replete with allegations that Harley-Davidson failed to

2  disclose significant safety issues, (*id.* ¶¶ 4, 12, 17, 23, 43-46 & 53-54), and that the

3  purchasers and lessees of the Class Vehicles received a product materially different

4  from that they expected, (*id.* ¶¶ 6, 14, 44-46 & 88).  As will be explained below in

5  more detail, unlike the omissions addressed in *Daugherty* and *Bardin*, Harley's

6  omissions were material precisely because they invoked safety concerns and the

7  reasonable expectation of the consumers.

8    A recent automobile defect case brought in the Central District of California

9  that applies *Falk*, *Marsikian  v. Mercedes-Benz USA, LLC*, No. 08-04876 AHM

10  (JTLx) at 9 (C.D. Cal. May 4, 2009), is instructive.  In *Marsikian*, plaintiffs brought

11  claims under California's UCL, CLRA, Fraud, Breach of Express Warranty and

12  Unjust Enrichment causes of action.  Judge Matz, relying heavily on *Falk*, found that

13  Mercedes-Benz had an affirmative duty to disclose material facts, such as the

14  "prospect of a safety problem, as well as the monetary cost and inconvenience of

15  water damage in the car."  *See Marsikian v. Mercedes-Benz USA, LLC*, No. 08-

16  04876 AHM (JTLx) at 9 (C.D. Cal. May 4, 2009).[4]  As set forth in this brief,

17  Plaintiffs make similar allegations showing Harley had a duty to disclose material

18  facts concerning safety defects and the monetary costs associated with such defects.

19    **1.    The facts concealed by Harley-Davidson were material**

20    To establish materiality, a plaintiff need only demonstrate that "had the

21  omitted information been disclosed, one would have been aware of it and behaved

22  _____

23  (...Continued)

24  that analysis to different facts, however, *Oestreicher* simply reached a different
conclusion.  The court noted that "the safety consideration was integral to [Falk's]

25  finding that the non-disclosed information was material," and so concluded that
under the facts before it, which involved no safety considerations, plaintiff had failed

26  to state a claim under the CLRA.  *Id.* at 971.

27  [4] A copy of the *Marsikian v. Mercedes-Benz U.S.A.* opinion is attached to Plaintiffs'
Appendix of Recent Authority.

**KNAPP,
PETERSEN
& CLARKE**   28

-7-

1    differently." *Falk*, 496 F. Supp. 2d at 1095 (quoting *Mirkin v. Wasserman*, 5 Cal. 4th

2    1082, 1093 (1993)); *Trew v. Volvo Cars of No. Am. LLC*, 2006 WL 306904, at *6

3    (E.D. Cal. Feb. 8, 2006).   Materiality is viewed from the perspective of a "reasonable

4    consumer." *Falk*, 496 F. Supp. 2d at 1095 (citation omitted).   Material facts may

5    include, but are not limited to, unreasonable safety defects, *see, e.g., Falk*, 496 F.

6    Supp. 2d at 1096 (explaining that defect to speedometer causing drivers to travel at

7    unsafe speeds is material), and monetary costs associated with such safety defects,

8    *see, e.g., Marsikian*, No. 08-04876, at *9 ("Given the plausible prospect of a safety

9    problem, as well as the monetary cost and inconvenience of water damage in the car,

10   Plaintiffs' allegations . . . are also plausible and plainly sufficient.").

11         Finally, contrary to Harley-Davidson's misinterpretation of the CLRA,

12   material facts may also include information about non-safety defects that cannot

13   result in physical harm.  *See, e.g., Stickrath*, 2008 WL 344209, at *3 (finding

14   knowledge about "the degradation of the communications satellites and associated

15   satellite telephone service since at least 2003" to be material and actionable under the

16   CLRA); *Stern v. AT&T Mobility Corp.*, 2008 WL 4382796, at *12 (C.D. Cal. Aug.

17   22, 2008) (Hon, Christina A. Snyder presiding) (finding that "a charge on a

18   customer's [cell phone] bill is material to the customer" and therefore actionable

19   under the CLRA).

20         Here, Plaintiffs have satisfied the pleading requirements for materiality.  The

21   Complaint alleges the materiality of the Harley Wobble defect, (FAC ¶¶ 1-6, 14-15,

22   44-46, 85-88 &107), including the cost of the aftermarket safety kits, (*id.* ¶¶ 12, 14,

23   49 & 50), and the significant safety dangers posed by the Harley Wobble, (*see, e.g.,*

24   *id.* ¶¶ 4, 12, 17, 23, 43-46 & 53-54).  Further, the Complaint alleges that Plaintiffs

25   reasonably expected their motorcycles would not experience severe wobbling,

26   weaving, and/or instability when being driven within their normal and/or expected

27   range of operation, (*id.* ¶ 88), and that Harley would either not sell vehicles with

28   known safety defects, or would disclose any such defect to its customers when it

KNAPP,
PETERSEN
& CLARKE

-8-

731112.1  08000/00917

1   learned of the defect, (*id.* ¶ 45).[5]   Moreover, Plaintiffs further allege that had "they

2   known about the defective nature of the Class Vehicles and their rubber-cushioned

3   mount system, they would not have purchased the Class Vehicles or would have

4   paid less for them." (*Id.* ¶ 87.)   *See, e.g., Trew*, 2006 WL 306904, at *6 (basing

5   denial of motion to dismiss in part on plaintiff's allegation that had she known of a

6   defect that caused her vehicle to shake, surge, or lose power, she "would not have

7   paid as much for her vehicle"); *Cirulli*, 2009 WL 4288367, at **5-6 (same).[6]

8       Moreover, Harley-Davidson deliberately misconstrues the law, as well as the

9   FAC, by arguing that no duty to disclose exists because "*Plaintiffs specifically*

10  *exclude 'those persons who have suffered personal injuries as a result of the facts*

11  *alleged.*'"  (MTD at 12 (quoting FAC ¶ 70) (emphasis in original).)  Harley cannot

12  and has not cited a single case holding that pleading a safety defect requires that the

13  named plaintiffs actually suffer personal injury or death due to the safety defect.

14  Indeed, such a case would directly contradict *Falk* (as well as this Court's decision

15  in *Stern*) because neither case involved plaintiffs pleading actual personal injury

16  due to the problems at issue.   *See generally Falk*, 496 F. Supp. 2d at 1093-96.

17      **2.**   **Harley-Davidson was under a duty to disclose the Harley Wobble to**

18          **Plaintiffs and Class Members**

19      Under California law, a duty to disclose material facts may arise in the

20  following circumstances: (1) when the defendant is in a fiduciary relationship with

---

[5] Whether these facts rise to the level of a valid safety concern is a question of fact that must be decided by a jury, not in a dispositive motion. *See, e.g., Glover v. BIC Corp.*, 6 F.3d 1318, 1325 (9th Cir. 1993) (whether disposable lighter posed safety risk was a jury question); *see also Sanchez v. WalMart Stores, Inc.*, 2008 WL 3272101, at *3 (E.D. Cal. Aug. 6, 2008) (finding that questions of fact preclude summary judgment of CLRA and UCL claims based on allegedly unsafe child stroller).

[6] A copy of the *Cirulli v. Hyundai Motor Co.* opinion is attached to Plaintiffs' Appendix of Recent Authority.

KNAPP,
PETERSEN
& CLARKE

the plaintiff; (2) when the defendant had exclusive knowledge[7] of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; or (4) when the defendant makes partial representations but also suppresses some material fact. *Id.* at 1094-96 (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 337 (1997)).  Here, Plaintiffs plead facts sufficient to show a duty to disclose under prongs (2) and (3).

### a. The Harley-Davidson Wobble was a Material Fact within Harley's Exclusive Knowledge

Harley-Davidson was obligated to disclose the Harley Wobble because it was a material safety fact within its exclusive knowledge. *See Shapiro v. Sutherland*, 64 Cal. App. 4th 1534, 1544 (1998) ("Generally where one party to a transaction has sole knowledge or access to material facts and knows that such facts are not known or reasonably discoverable by the other party, then a duty to disclose exits."). Indeed, where a manufacturer has "access to the aggregate data from its dealers," and "access to the numerous complaints from customers," then that manufacturer has a duty to disclose material facts because such data is within the manufacturer's exclusive knowledge. *Falk*, 496 F. Supp. 2d at 1096-97 ("Since, as plaintiffs argue, GM 'was in a superior knowledge to know' that its speedometers might fail, plaintiffs successfully state a CLRA claim.").

As *Falk* demonstrates, Harley, as the manufacturer, had superior knowledge and had a duty to disclose the Harley Wobble. *Id.* at 1096-97; *see State of New York v. General Motors Corp.*, 466 N.Y.S.2d 124, 127 (N.Y. Sup. Ct. 1983) ("[T]he rule is clear that caveat emptor is no longer an effective shield.  If one party has superior knowledge or has means of knowledge not available to both parties, then he is under a legal obligation to speak and silence would constitute fraud.") (citations omitted).

---

[7] The Ninth Circuit has similarly held that under California law "a duty to disclose can... arise when one party has superior knowledge" of material facts. *Funk v. Sperry Corp.*, 842 F.2d 1129, 1134 (9th Cir. 1988).

KNAPP, PETERSEN & CLARKE

-10-

1   Here, Harley-Davidson had a duty to disclose the Harley Wobble. (FAC ¶¶

2   55, 61-62 and 85.) Plaintiffs did not know about the defect at the time of purchase.

3   (*See, e.g., id.* ¶ 14.) Indeed, Harley-Davidson had exclusive knowledge of material

4   safety facts that were not known to Plaintiffs, and withheld those facts from

5   Plaintiffs. (*Id.* ¶¶ 1-6, 11, 43, 45, 55, 61-63 & 85.) These allegations are sufficient

6   to give rise to a duty to disclose.

7   Harley-Davidson, however, mistakenly relies on *Wolph v. Acer America Corp,*

8   2009 WL 2969467 (N.D. Cal. Sept. 14, 2009), to contend that a duty to disclose did

9   not arise because certain information (*e.g.,* the presence of aftermarket safety kits,

10   internet postings, complaints to NHTSA, and a magazine article that discusses the

11   Harley Wobble) was publicly available when Plaintiffs purchased their vehicles.

12   (MTD at 9:10.) Harley's reliance on *Wolph* is misplaced for two reasons.

13   First, in *Wolph,* the district court found plaintiffs failed to allege "*any*

14   information known by Acer that was unavailable to the public." *Wolph,* 2009 WL

15   2969467, at *4 (emphasis added). Here, unlike *Wolph,* Plaintiffs allege several

16   categories of information unavailable to the public and *only* available to Harley: the

17   aggregate data from its dealerships, pre-release testing data, numerous complaints

18   from customers, complaints to the National Highway Traffic Safety Administration,

19   confidential settlement agreements, personal injury lawsuits filed against Harley, and

20   other sources of aggregate information. (FAC ¶¶ 7, 53, 55 & 61.) The reasonable

21   consumer would not have this data. *See, e.g., Falk,* 496 F. Supp. 2d at 1096-97

22   ("Only GM had access to the aggregate data from its dealers[,] only GM had access

23   to the numerous complaints.") (quotations omitted); *Rush,* 2008 WL 509562, at *4

24   ("Only Whirlpool had access to its internal data, including pre-release testing data;

25   ... access to data from its authorized retailers; and ... access to the numerous

26   complaints from its customers.").

27   Second, even if such information had been available, a reasonable consumer

28   cannot be charged with knowledge thereof. As the *Falk* court explained under

KNAPP,
PETERSEN
& CLARKE

-11-

731112.1  08000/00917

1    factually similar circumstances: "It is true that the prospective purchasers, with

2    access to the internet, could have read the many complaints . . . [However,] many

3    consumers would not have performed an internet search before beginning a car

4    search. Nor were they required to do so." *Falk*, 496 F. Supp. 2d  at 1097;  *see also*

5    *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009) ("[A]llegation of reliance is not

6    defeated merely because there was alternative information available to the consumer-

7    plaintiff, even regarding an issue as prominent as whether cigarette smoking causes

8    cancer."). Indeed, resolving the question of constructive knowledge of a design

9    defect is not even appropriate on a motion to dismiss. *In Re OnStar Contract Lit.*,

10   600 F. Supp. 2d. 861, 871-72 (E.D. Mich., 2009) (explaining that issue of

11   constructive notice of material facts involved fact questions not appropriate for

12   resolution on motion to dismiss).

13       Because material facts about a safety defect were within Harley's exclusive

14   control and because Harley had superior knowledge of the defect, Harley had a legal

15   duty to disclose the safety defect to its consumers, giving rise to a CLRA claim based

16   on its failure to do so.

17       **b.**   **Plaintiffs Allege That Harley-Davidson actively concealed the**

18              **Harley Wobble**

19       Defendants were also obligated to disclose the defect because they "actively

20   concealed" it. Active concealment requires intent to defraud. *Falk*, 496 F. Supp. 2d

21   at 1097. Failure by a vehicle manufacturer to notify other customers or to effect a

22   recall in the face of complaints evinces such an intent. *See, e.g.*, *Falk*, 496 F. Supp.

23   2d at 1097; *See Stickrath*, 2008 WL 344209, at *3 ("Plaintiffs' allegations that

24   Defendant knew of material defects but did not disclose them to potential customers

25   are sufficient to allege a duty to disclose under an active concealment theory.").

26       Here, Plaintiffs allegations show that Harley-Davidson actively concealed a

27   material safety defect. (FAC ¶¶ 4-12, 43, 55, 57, 64 & 66-6, 80, 86-87, 97, 105-106,

28   108-109.) Specifically, Harley at the time of the sale and thereafter knew about the

KNAPP,
PETERSEN
& CLARKE

-12-

Harley Wobble from its customers, dealer repair orders, internal testing, as well as other sources, but failed to notify the customers or effect a recall, and did not offer all its customers a suitable repair. (*Id.* ¶¶ 5 & 12.) Even after Plaintiffs contacted Harley and its dealers about the Harley Wobble, they actively concealed the defect by attributing it to either external causes, such as road condition, or easily fixed problems, like low tire pressure. (*Id.* ¶¶ 43, 57, & 64-67; *see also* Ex. E to MTD.) Because Harley had a duty to disclose material safety defects to Plaintiffs and declined to do so, this suffices to defeat a motion to dismiss.

**B.   <u>Plaintiffs' Claims are not Barred by the Economic Loss Rule</u>**

Harley also contends that under California's economic loss rule, Plaintiffs cannot sustain a CLRA claim without first showing personal injury. (MTD at 12:4-21.)[8] This is not the law.

What Harley fails to note is that the economic loss rule does not apply to claims grounded in statute, such as Plaintiffs' CLRA[9] and UCL claims.[10] Indeed, Harley cannot point to *any* California court that has applied the economic loss rule to bar such claims, and neglects to cite to two recent federal decisions that declined to do so. *See, e.g., Inter-Mark USA, Inc. v. Intuit, Inc.*, 2008 WL 552482, at *11 (N.D. Cal. Feb. 27, 2008) ("The Court does not find any case law that suggests the California Supreme Court would extend the economic loss rule to [UCL] claims.");

---

[8] The economic loss rule states that plaintiffs cannot recover in tort for purely economic losses. *Seely v. White Motor, Co.*, 63 Cal. 2d 9 (1965).

[9] *See* Cal. Civ. Code §1760 (the CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection.").

[10] The UCL and CLRA are similar in that they both provide consumers with powerful protection from "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770(a), Bus. & Prof. Code § 17200). The two acts are often alleged in the same lawsuit, and a CLRA violation can serve as the "unlawful" prong and also furnish the "fraudulent" basis of a UCL action. *Daugherty*, 144 Cal. App. 4th at 837-38.

731112.1  08000/00917

1  *Sanchez*, 2008 WL 3272101, at **2-3 (concluding same with respect to UCL and

2  CLRA claims).

3  **C.    Harley-Davidson Failed to Adequately Comply with the Requirements of**

4  **Cal. Civ. Code § 1782(c)**

5        Harley-Davidson mistakenly contends that: "it was incumbent upon

6  Plaintiffs to allow Harley to inspect their motorcycles so that Harley could

7  determine if Plaintiffs were entitled to the relief they sought.  Plaintiffs did not

8  [and] as a result are barred from seeking damages." (MTD at 17:19-23 (citing Civil

9  Code §1782(b).)  Harley misinterprets the law.  First, nothing in section 1782(b)

10  suggests Harley is entitled to conduct a vehicle inspection of Plaintiffs vehicles

11  before it can offer the requested relief, and Harley has cited to no authority

12  suggesting otherwise.  Second, section 1782(b) is not applicable in circumstances

13  where a demand has been made on behalf of similarly situated consumers (*i.e.*, a

14  putative class action). *Kagan v. Gibraltar Savings and Loan Ass'n.*, 35 Cal. 3d

15  582, 595 (1984), *disapproved on other grounds* by *Meyer v. Sprint Spectrum L.P.*,

16  45 Cal. 4th 634, 643 fn.3 (2009).

17        As the *Kagan* court explained, section 1782(b), which applies only to

18  individual claims, states: "[e]xcept as provided in subdivision (c), *an individual*

19  consumer cannot maintain an action for damages under section 1780 if an

20  appropriate remedy is given or agreed to be given within a reasonable time, to the

21  individual consumer." *Id.* (emphasis added) (quotation omitted).  Section 1782(c),

22  which applies only to class actions, provides that a class action for damages may be

23  maintained under section 1782 unless the defendant has: (1) identified or made a

24  reasonable effort to identify all similarly situated consumers; (2) notified such

25  consumers that upon their request it will provide them with an appropriate remedy;

26  (3) provided, or within a reasonable time will provide, such relief; and (4)

27  demonstrated that it has ceased, or within a reasonable time will cease, from

28  engaging in the challenged conduct. *Id.*

KNAPP,
PETERSEN
& CLARKE

-14-

1    These exceptions exist, in part, to prevent prospective defendants from
2  "picking off" plaintiffs one by one upon receiving a CLRA notice letter without
3  correcting the violation as to all similarly situated consumers.[11] *Kagan*, 35 Cal.3d
4  at 593, 595 (holding that individual customer properly brought class action even
5  though prospective defendant offered remedy to individual).  Thus, an individual,
6  under section 1780(b), may be precluded from bringing a claim if an "appropriate
7  remedy" is given; section 1780(c), however, allows that same individual to remain
8  a class representative until the requirements of section 1780(c) are satisfied.  Here,
9  these requirements were not satisfied.

10    In their CLRA letters dated January 13, 2009, Plaintiffs demanded that
11  Harley, for all class members: (1) pay the costs of repairing the Harley Wobble; (2)
12  reimburse those who incurred expenses in repairing the Harley Wobble; and (3)
13  notify all owners of the Class Vehicle about the Harley Wobble.  (Exs. A, p. 25&
14  B, p. 28 to MTD.)  Harley, however, made no effort to satisfy these obligations.
15  (*See* Exs. C-E to MTD.)  Instead, like the defendants in *Kagan*, Harley tried to
16  circumvent these requirements by addressing the potential claims on an individual
17  basis.  Harley demanded an inspection of Plaintiffs' vehicles and sought to extend
18  "individual" vehicle "repurchase/replacement settlement offer[s]."  (*See, e.g.*, Ex.
19  C, p. 30, Ex. D, p. 32, and Ex. E, p. 35.)[12]  This is precisely the conduct the statute
20  was intended to prevent.

21
22
23

24  [11] In its motion, Harley-Davidson conveniently omitted reference to subdivision (c),
25  which states the exception applicable to class actions.

26  [12] Even if the motion to dismiss is granted, plaintiffs should be granted opportunity to
comply with the notice requirements.  *Morgan v. AT&T Wireless Services*, 177 Cal.
27  App. 4th 1235, 1261 (Sept. 23, 2009), *in accord* with *Shein v. Canon U.S.A., Inc.*,
2009 WL 3109721 (C.D. Cal. Sept. 22, 2009) (Christina A. Snyder presiding).

28

KNAPP,
PETERSEN
& CLARKE

-15-

731112.1  08000/00917

1  **D.    Harley-Davidson's Warranty is Unconscionable because it Forces**
2  **Plaintiffs to Choose between Riding an Unsafe Vehicle and Voiding their**
3  **Warranty**

4       Under the CLRA, "Inserting an unconscionable provision in [a] contract" is
5  "unlawful." Civ. Code § 1770(a)(19).  Harley's warranty provision, which would
6  void the warranty should customers add aftermarket safety kits to their vehicles, is
7  unlawful because, as explained in more detail below, it requires Plaintiffs to make an
8  unconscionable choice: risk personal safety by driving motorcycles with a safety
9  defect, or void the warranty by fixing the defect.

10      **1.    Plaintiffs have standing to bring an Unconscionablity Claim under**
11            **the CLRA**

12      Harley-Davidson cannot reasonably contend Plaintiffs have no standing to
13  bring CLRA claims because they have not yet suffered damages due to an
14  unconscionable provision in Plaintiffs' warranty.  (MTD at 12:26-14:5.)  The
15  Harley Wobble is not a theoretical problem yet to manifest itself.  Class members
16  have actually experienced it.  (*See, e.g.*, FAC 12, 18-19 & 23-24.)  They risk their
17  safety every time they ride their motorcycles at highway speeds.  The
18  unconscionable warranty provision thus compels an untenable choice for Plaintiffs
19  and prospective class members: "your warranty or your life."

20      The only case Harley cites to support its position, *Meyer v. Sprint Spectrum*
21  *L.P.*, 45 Cal. 4th 634 (2009), is distinguishable.  In *Meyer*, the plaintiffs brought a
22  preemptive suit under the CLRA, arguing that certain contract terms were
23  unconscionable. *Id.* at 639.  Significantly, none of terms had been implicated
24  because plaintiffs had yet to suffer any damages. *Id.* at 646.  Sprint demurred,
25  arguing that "a consumer must experience some damage, some type of increased
26  costs, as a result of the unconscionable terms in order to have standing . . . ." *Id.* at
27  641.  The California Supreme Court agreed, concluding that no CLRA standing
28  exists in cases where "an alleged unlawful practice under the CLRA has not

**KNAPP,
PETERSEN
& CLARKE**

-16-

731112.1  08000/00917

1   resulted in some kind of tangible increased cost or *burden to the consumer*." *Id.* at

2   642-43 (emphasis added).  The court also found that this burden "may encompass

3   harms other than pecuniary damages such as certain types of transaction costs

4   [(*e.g.*, lawsuits)] and opportunity costs." *Id.* at 640.

5        Here, unlike *Meyer*, the suit is *not* preemptive.  Plaintiffs actually suffer the

6   burden they allege: an unsafe wobble when the Class Vehicles are driven within

7   their expected and normal operating range. (FAC ¶¶ 16-26.)  The solution—

8   installing an aftermarket safety kit—will "void part or all of their warranty."[13]  (*Id.*

9   ¶¶ 20, 81-82.)  If Plaintiffs are unwilling to risk their lives or void their warranty,

10  then they will forego opportunity costs by not riding their vehicles.

11       Further, by filing this lawsuit, Plaintiffs incur transaction costs.  *Meyer* does

12  not preclude this argument because it expressly applies to "preemptive expenditure

13  of fees . . . ."  This lawsuit is not preemptive because Plaintiffs have actually

14  experienced the harm they allege: the Harley Wobble.

15  **2.    Plaintiffs sufficiently plead unconscionability of the warranty**

16  **provision**

17       California recognizes that a term-limiting a warranty may be unconscionable

18  and thus unenforceable.  *A&M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473,

19  484 (1982).  Describing unconscionability as a "flexible doctrine designed to allow

20  courts to directly consider numerous factors that may adulterated the contracting

21  process," the California Supreme Court held that a form term disclaiming warranty

22  protection was not enforceable against the plaintiff, the purchaser of farm

23  equipment, because the unenforceable waiver term was not negotiated due to the

24  parties' unequal bargaining power. *Id.* at 484-93.  "[U]nconscionability has both a

25

---

26  [13] Harley-Davidson may argue that they "may" void the warranty, so injury is
    uncertain.  However, unless Harley-Davidson expressly exempts aftermarket safety

27  kits, the mere threat of voiding the warranty is harmful because it prevents
    installation of aftermarket safety parts.

28

KNAPP,
PETERSEN
& CLARKE

1 procedural and a substantive element," the former focusing on oppression or

2 surprise due to unequal bargaining power, the latter on overly harsh or one-sided

3 results. *Amendariz v. Fdn. Health Psycare Svcs., Inc.*, 24 Cal. 4th 83, 114 (2000)

4 (quotation omitted). They both "need not be present in the same degrees,"

5 however, and a high degree of one can outweigh the low degree of the other. *Id.*

6     Harley's unconscionable provision provides that installing "competition parts

7 to enhance performance may void all or part of your new motorcycle warranty

8 . . . ." (FAC ¶¶ 81-82.) Plaintiffs allege that the same or similar provision has

9 been asserted within the express warranty of all the Class Vehicles, and that this has

10 prevented Bruce from installing a non-Harley safety kit on his vehicle. (*Id.* ¶¶ 20 &

11 47-49.) These allegations, coupled with the active concealment of a known defect,

12 render Harley's warranties both substantively and procedurally unconscionable.

13 *Armendariz*, 24 Cal. 4th at 114.

14     The warranties are procedurally unconscionable because they are contracts of

15 adhesion with a hidden term that class members are not aware of until after they

16 purchase the Class Vehicles and need to fix the Harley Wobble. *Flores v.*

17 *Transamerica Homefirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001).[14] They are

18 _____

19 [14] Harley's argument that Plaintiffs fail to sufficiently allege a meaningful choice is
unavailing. (MTD at 15, fn.15.) While Plaintiffs may have lacked a meaningful

20 choice because all manufacturers insert the same or similar provisions in their
warranties, here, Harley deprived its customers of the opportunity to exercise this

21 choice by failing to disclose the information that would implicate the warranty
provision. Plaintiffs had no chance to opt for a warranty that would have covered the

22 aftermarket kit because Harley-Davidson hid the defect from them, resulting in
unfair surprise. Though, the case law most often addresses "surprise" in the form of

23 a buried boilerplate clause, the facts here could certainly lead a jury to find unfair

24 surprise where a seemingly innocuous warranty exclusion masks a deeper inequity.
*See, e.g., Carlson v. General Motors Corp.*, 883 F.2d 287, 296 (4th Cir. 1989)

25 ("Here, proof that GM knew of and failed to disclose major, inherent product
defects would obviously suggest that its imposition of the challenged 'durational

26 limitations' on implied warranties constituted "overreaching," and that the
disclaimers themselves were therefore 'unconscionable'"); *Busian v.*

27 *DiamlerChrysler Corp.*, 411 F. Supp. 2d 614, 618, 621 (M.D.N.C. 2006) (same).

KNAPP,
PETERSEN
& CLARKE
28

-18-

731112.1  08000/00917

1  substantively unconscionable because they are so one-sided and harsh as to provide

2  Harley with the complete discretion to void the Class Vehicles' express warranty

3  when class members install aftermarket safety parts to remedy a defect for which

4  Harley is responsible and has so far refused to repair. *Id.*[15]

5  **E.    Plaintiffs Adequately Plead A Violation Of The California Unfair**

6          **Competition Law Provisions**

7          A defendant is liable under the UCL for practices that are: (1) fraudulent, (2)

8  unlawful, or (3) unfair. Cal. Bus. & Prof. Code § 17200. In other words, "a practice

9  is prohibited as unfair or deceptive even if not unlawful and vice versa." *Cel-Tech*

10 *Communications v. L.A. Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999). The

11 FAC alleges facts giving rise to Harley's liability under these three circumstances.

12 (FAC ¶¶ 92-101.)

13         **1.    Harley-Davidson engaged in illegal practices**

14         "The 'unlawful' practices prohibited by section 17200 are any practices

15 forbidden by law." *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39

16 (1994). Violating the CLRA constitutes a violation of the UCL. *See Falk*, 496 F.

17 Supp. 2d at 1098. Here, Harley's unlawful practices are predicated on Civil Code

18 Section 1770(a)(5), (7) & (9). (FAC ¶¶ 80 & 82.)

19         **2.    Harley-Davidson Engaged in Fraudulent Conduct**

20         Fraud under the UCL is "distinct from common law fraud." *In re Tobacco II*

21 *Cases*, 46 Cal. 4th 298, 312 (2009). Under the UCL, it is not necessary to plead

22 actual falsity, knowledge by the perpetrator, and reasonable reliance, because the

23 focus is on defendant's conduct, not plaintiff's damages. *Id.* To establish that

24 Harley's conduct constituted a fraud under the UCL, Plaintiff need only show that

25 "members of the public are likely to be deceived." *Daugherty*, 144 Cal. App. 4th at

26

27 [15] *And see, e.g., Carlson v. General Motors Corp.*, 883 F.2d at 296; *Busian*, 411 F.
   Supp. 2d at 621 (same).

28

KNAPP,
PETERSEN
& CLARKE

-19-

838.  Selling a vehicle without disclosing that it will unsafely wobble within its expected range of operation is likely to deceive consumers.  *Falk* 496 F. Supp. 2d at 1098 ("[M]embers of the public would very likely be deceived" by failure to disclose safety defect.).

As discussed above, Plaintiffs allege a duty to disclose, and also allege facts demonstrating that Harley breached this duty.  Ultimately, however, whether or not Harley's business practices are deceptive is a question of fact that requires consideration and weighing of evidence from both sides, and thus is not ordinarily suitable for decision on demurrer.  *See Linear Technology Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134-35 (2007).  Consumer surveys, anecdotal evidence, and expert testimony regarding consumer assumptions are often integral to the court's ultimate determination.  *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) ("Surveys and expert testimony regarding consumer assumptions and expectations may be offered but are not required; anecdotal evidence may suffice . . . .").  Because it is far from "impossible" that plaintiffs will be able to present such evidence to support its allegation that a reasonable consumer was likely to be deceived by Harley-Davidson's conduct, this is not one of those "rare situations" where granting a motion to dismiss is appropriate.  *Williams v. Gerber Products Co.*, 523 F.3d 934, 939 (9th Cir. 2008).

### 3.    Harley-Davidson Engaged in Unfair Practices

"A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457, 1473 (2006).  To determine whether a business practice is unfair, the court must review the evidence from both parties and weigh any legitimate utility of the practice against the harm to consumers; this decision "cannot usually be made on demurrer."  *See id.*

KNAPP,
PETERSEN
& CLARKE

-20-

731112.1  08000/00917

1    Here, Plaintiffs allege practices, including Harley's failure to disclose the

2    Harley Wobble and its motives for not issuing a recall to remedy the problem,

3    (FAC ¶¶ 7-11), that, upon review of all the evidence, may prove to be contrary to

4    public policy, immoral, unethical, unscrupulous and/or substantially injurious to

5    consumers. *See Mourning v. Smithkline Beecham Corp.*, 2009 WL 733873, at *4

6    (N.D. Cal. March 17, 2009) ("Failing to provide safety information is a practice

7    that violates public policy").

8    F.    **Harley-Davidson Cannot Avoid Liability by Claiming Plaintiffs'**

9         **Transactions were with Authorized Dealers, not Harley**

10    Harley-Davidson cannot claim, under applicable case law, that Plaintiffs are

11    precluded from bringing their fraudulent omission claim because they did not

12    "purchase the Class Vehicles from Harley-Davidson," and therefore did not have

13    "any contractual relationship or *transaction*" with Harley. (*See* MTD at 9:9-13

14    (emphasis added).)  No case has ever held that a manufacturer cannot be held liable

15    for fraudulent omissions for selling a product through authorized dealers; indeed,

16    this would be contrary to well-established California authority. *Shin v. BMW of*

17    *North America*, 2009 WL 2163509, at *3 (C.D. Cal. July 16, 2009) (Plaintiffs who

18    purchased used vehicles from third party were in a "transaction" with BMW under

19    the CLRA.); *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144 (N.D.

20    Cal. 2005) ("[P]laintiffs who purchased used cars have standing to bring CLRA

21    claims, despite the fact that they never entered into a transaction directly with

22    [Ford]."); *In Re OnStar Contract Litig.*, 600 F. Supp. 2d. at 872-73 (same).  A

23    similar/related concept applies to fraud claims because vehicle manufacturers know

24    that their vehicles will be sold by their authorized dealers to a class of consumers,

25    and they have a duty to disclose material facts that will affect the decision of the

26    intended purchaser. *See e.g., Barnuhouse v. City of Pinole*, 133 Cal. App. 3d 171,

27    193 (1982) (allowing fraudulent nondisclosure claim against the developer of a

28    subdivision by an owner of a house in the subdivision, even though the owner was

KNAPP,
PETERSEN
& CLARKE

-21-

1   not the original owner and had never had a relationship with the developer); *Varwig*

2   *v. Anderson-Behel Porche/Audi, Inc.*, 74 Cal. App. 3d 578, 581-82 (1977) (applying

3   same to resale of automobile).

4        As these cases show, Harley's claim that it was not in a transaction with

5   Plaintiffs simply has no merit, otherwise, Harley could simply cut off liability for

6   the safety of its products by using authorized third-party dealers to sell and

7   distribute their products.

8   **G.   Plaintiffs Sufficiently Plead Their Fraud Based Claims Because Rule**

9        **9(b)'s Specificity Requirement is Less Stringently Applied in a Claim of**

10       **Fraud by Omission**

11       As explained above in the Legal Standards section above, where "plaintiff is

12   alleging a failure to act instead of an affirmative act, he cannot point out the

13   specific moment when the defendant failed to act." *Id.*  Inability of Plaintiffs to

14   specify the time, place and content of Defendants' omissions will therefore not bar

15   their claims under Rule 9(b). *In re Apple & AT&TM Antitrust Litig.*, 596 F. Supp.

16   2d at 1310 (N.D. Cal. Oct. 1, 2008) (citing *Falk*, 496 F. Supp. 2d at 1099).

17       At the heart of this case is Harley's failure to disclose the defective nature of

18   the Class Vehicles to consumers.  Plaintiffs' allegations provide the requisite

19   notice. (FAC ¶¶ 1-6, 12, 43, 95-97.)  Plaintiffs have identified the material

20   information Harley knew[16] since 2002 and withheld from consumers, including the

21   defective nature of the class vehicles and the consequences of the defect. (*Id.* ¶¶ 1-

22   6.)  Plaintiffs also allege with particularity: Harley possessed exclusive knowledge

23   of aggregate information about the problem, (*id.* ¶¶ 7, 53, 44, 61, 85 & 106); the

24   materiality of that information, (*id.* ¶¶ 5-6, 14, 44-46, 87-88, 95-97 & 107); and

25   Plaintiffs' reliance on the materiality of the non-disclosed information and

26

27   [16] "[P]laintiffs may aver scienter generally." *In re GlenFed, Inc. Sec. Litig*, 42 F.3d
     1541, 1547 (9th Cir. 1994) (*en banc*).

KNAPP,
PETERSEN
& CLARKE

28

-22-

1   consequent damages (*e.g.*, Plaintiffs overpaid for the Class Vehicles and were

2   required to purchase aftermarket safety kits), (*id.* ¶¶ 12, 14-15, 20, 25, 45-46, 56,

3   58-60, 87-89, 100-101, 108-10).  *See Falk*, 496 F. Supp. 2d at 1099 (holding similar

4   allegations to be sufficient under Rule 9(b)); *see also Marsikian*, No. 08-04876, at

5   11 (same).

6        Harley also claims that the FAC fails Rule 9(b)'s particularity requirement

7   because "Plaintiffs lump both Defendants together without describing the role and

8   participation of each Defendant in the alleged fraudulent scheme or distinguishing

9   their roles in the manufacturing, distribution, and sale of the vehicles."[17]  (MTD at

10  6-7.)  This is a non-sequitur.  Of the two named Defendants, Harley-Davidson, Inc.

11  is the parent company, and Harley-Davidson Motor Company, Inc. is the

12  manufacturer and distributor.  Plaintiffs fairly assume Defendants are on notice as

13  to these facts.  Moreover, Plaintiffs allege a failure to disclose, not a

14  misrepresentation.  *Both* Defendants omitted the material facts at issue in this case

15  and as a result the allegations of the FAC apply to both.  *See In re Apple & AT&TM*

16  *Antitrust Litig.*, 596 F. Supp. 2d at 1310 (Plaintiffs fraudulent omission claims

17  against AT&T and Apple were alleged with particularity because both AT&T &

18  Apple were alleged to be equally responsible for the omissions).[18]

19

20

---

21  [17] Defendants here do not even distinguish between the two entities.  For example, in
22  two letters sent in response to Plaintiffs' notice letter (Exhs. C & D), Defendants
    refer to themselves only as  "Harley-Davidson," and in a third letter (Ex. "E"),
23  Defendants refer to "Harley-Davidson Motor Company Group LLC," an entity not
24  named in the complaint.  Thus, Harley either acknowledges that three entities operate
    with one voice, or no response has been provided to Plaintiffs' notice letter.

25  [18] For this reason, Harley's reliance on *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65
26  (9th Cir. 2007) is misplaced because there plaintiffs failed to distinguish between two
    entities that made *affirmative misrepresentations*.  (MTD at 6.)  Here, no such
27  distinction is needed because Plaintiffs brought suit against Defendants not because
28  of what they said, but because of what they knew and did not say to consumers.

KNAPP,
PETERSEN
& CLARKE

-23-

1   **H.**    **Harley-Davidson Relies on Mistaken Case Law to Create a Vertical**

2        **Privity Requirement under the Song-Beverly Act**

3        Defendants' argument that vertical privity is required to bring a claim under

4 the Song-Beverly Act for breach of implied warranty of merchantability "ignores

5 the plain language" of the statute. *Gusse v. Damon Corp.*, 470 F. Supp. 2d 1110,

6 1116 fn.9 (C.D. Cal. 2007). The Song-Beverly Act does not impose any privity

7 requirement for implied warranties for manufacturers. *See id.* (citing *Cal. Civ.*

8 *Code* § 1792); *see also Gonzalez v. Drew Industries, Inc.*, 2007 U.S. Dist. LEXIS

9 35952, at **2-3 (C.D. Cal. 2007) (vertical privity not required for breach of implied

10 warranty of merchantability under the Song-Beverly Act). Here, Plaintiffs allege

11 Harley was the manufacturer, distributor or seller of the Class Vehicles, and as

12 such, provided an implied warranty of merchantability.[19] (*Id.* ¶ 113.)

13        Harley's reliance on *Anunziato v. e-Machines*, 402 F. Supp. 2d 1135, 1141

14 (2005), is to no avail. (MTD at 20.) There, the court relied on *Osborne v. Subaru*

15 *of America*, 198 Cal. App. 3d 646 (1988), a case in which recovery was sought

16 under Commercial Code § 2314. While the *Osborne* court did find that vertical

17 privity was required under § 2314, it never addressed claims brought under the

18 Song-Beverly Act. *See Osborne*, 198 Cal. App. 3d at 651.[20] The *Anunziato* court

19

20

21

---

22 [19] To the extent that Harley argues it is only the distributor of the Class Vehicles,
not their manufacturer, Cal. Civ. Code § 1795 provides: "If express warranties are
23 made by persons other than the manufacturer of the goods, the obligation of the
person making such warranties shall be the same as that imposed on the
24 manufacturer under this chapter." Thus, Harley-Davidson provided an express
25 warranty, and as a result, provided an implied warranty as well. (FAC ¶ 81.)

26 [20] *See also Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1304 (2009) (citing
Cal. Civ. §1790.3 ("'[T]o the extent that the [Song-Beverly] Act gives rights to
27 buyers of consumer goods, it prevails over conflicting provisions of the Uniform
Commercial Code.'")).

**KNAPP,**
**PETERSEN**
**& CLARKE** 28

-24-

731112.1  08000/00917

1   was mistaken in bootstrapping § 2314's vertical privity requirement to the Song-

2   Beverly Act, and consequently, so too is Harley.[21]

3                                    **V.**

4                             **CONCLUSION**

5          For the foregoing reasons, Plaintiffs respectfully urge this Court to deny

6   Harley-Davidson's Motion to Dismiss.[22]  However, if the court grants the motion as

7   to any cause of action, Plaintiffs should be granted leave to amend.

8

9   Dated:  December 16, 2009          KNAPP, PETERSEN & CLARKE

10                                     By: _____

11                                        Stephen M. Harris
                                          Attorneys for Plaintiffs
12                                        STEVEN C. BRUCE and
                                          NORMAN T. WESLEY, JR.,
13                                        individually and on behalf of a class
                                          of similarly situated individuals

14

15

16

17

18   [21] Even if vertical privity is required, Plaintiffs state a valid claim for breach of
     implied warranty of merchantability.  Under California law, vertical privity is created
19   when a manufacturer has provided an express warranty that runs to the ultimate
     consumer.  Thus, a direct purchase contract between the consumer and the
20   manufacturer is not necessary to bring a claim for breach of implied warranty.  *See,*
     *e.g., Atkinson v. Elk Corp. of Texas,* 142 Cal. App. 4th 212, 229 (2006).  Here,
21   Harley extends an express warranty to each of the purchasers and lessees of the Class
     Vehicles and thereby extends an implied warranty as well.  (FAC ¶ 81.).  *See also*
22   *Cartwright v. Viking Industries,* 249 F.R.D. 351, 356 (E.D. Cal. 2008) (same).

23   [22] Under California law, unjust enrichment claims can exist as a separate cause of
24   action where "the claim is grounded in equitable principles of restitution."  *Hirsch v.*
     *Bank of Am.,* 107 Cal. App. 4th 708, 721-22 (2003).  There is no dispute that
25   restitution is permitted under the UCL.  Nevertheless, Plaintiffs acknowledge that
     this court, relying on *Falk,* has ruled that under California law, unjust enrichment is a
26   remedy, not a cause of action, and are willing to accept that ruling here.  *Shein v.*
27   *Canon U.S.A., Inc.,* 2009 WL 1774287, at **5-6 (C.D. Cal. June 22, 2009) (Hon.
     Christina A. Snyder presiding).

28

KNAPP,
PETERSEN
& CLARKE

                                      -25-