JEFFREY A. ROSENFELD (SBN 136896)
jeffrey.rosenfeld@dlapiper.com
ANA TAGVORYAN (SBN 246536)
ana.tagvoryan@dlapiper.com
MATTHEW D. CAPLAN (SBN 260388)
matthew.caplan@dlapiper.com
**DLA PIPER LLP (US)**
2000 Avenue of the Stars, Fourth Floor North Tower
Los Angeles, CA  90067-4704
Telephone:  310.595.3000
Facsimile:  310.595.3300

MARK A. KIRCHER (*admitted pro hac vice*)
mark.kircher@quarles.com
**QUARLES & BRADY LLP**
411 East Wisconsin Avenue, Suite 2040
Milwaukee, Wisconsin 53202-4497
Telephone:  414.277.5347
Facsimile:  414.271.3552

Attorneys for Defendants
HARLEY-DAVIDSON MOTOR COMPANY
GROUP, LLC and HARLEY-DAVIDSON MOTOR
COMPANY, INC.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN C. BRUCE, and NORMAN T. WESLEY, JR., individually and on behalf of a class of similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> HARLEY-DAVIDSON MOTOR COMPANY, INC., et al. <br><br> Defendants. | CASE NO.  CV 09-6588 CAS (RZx) <br><br> *[Hon. Christina A. Snyder, Crtrm 5]* <br><br> **DEFENDANTS HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC AND HARLEY-DAVIDSON MOTOR COMPANY, INC.'S SUPPLEMENTAL AUTHORITY IN SUPPORT OF THEIR OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** <br><br> Date:          January 23, 2012 <br> Time:          10:00 a.m. <br> Courtroom:   5 <br><br> Complaint Filed:  September 10, 2009 <br> Trial Date:         None |

DLA PIPER LLP (US)
LOS ANGELES

HARLEY-DAVIDSON'S SUPPLEMENTAL AUTHORITY IN SUPPORT OF OPPOSITION TO PLAINTIFFS'
CLASS CERTIFICATION MOTION

EAST\47759203.1

Defendants Harley-Davidson Motor Company Group, LLC and Harley-Davidson Motor Company, Inc. (collectively, "Harley-Davidson") respectfully submit this supplemental authority in support of their Opposition to Plaintiffs Steven C. Bruce and Norman T. Wesley, Jr.'s (collectively, "Plaintiffs") Motion for Class Certification.

On January 12, 2012, after Harley-Davidson filed their Opposition to Plaintiffs' Motion for Class Certification, the United States Court of Appeals for the Ninth Circuit issued an opinion in *Mazza v. American Honda Motor Co., Inc.* that is relevant to the issues raised by Harley-Davidson's Opposition to Plaintiffs' Motion for Class Certification. *Mazza v. American Honda Motor Co., Inc.*, — F.3d — , 2012 WL 89176 (9th Cir. 2012). A true and correct copy of the opinion is attached hereto as Exhibit A.

In *Mazza*, the district court certified a class of persons who purchased or leased certain Acura automobiles that contained a computerized braking system under Federal Rule of Civil Procedure 23(b)(3) for alleged violations of California's unfair competition law, California Business and Professions Code section 17200, *et seq.* (the "UCL"), the Consumer Legal Remedies Act, California Civil Code section 1750, *et seq.* (the "CLRA"), and California's false advertising law, California Business and Professions Code section 17500, *et seq.*, as well as a claim for unjust enrichment based on misrepresentations and omissions regarding the braking system. *Id.* at *1-3. The Ninth Circuit vacated the class certification order in part because reliance could not be proved on a class-wide basis for the plaintiffs' UCL and CLRA claims. *Id.* at *11-12. Likewise, here, Plaintiffs' proposed classes should not be certified because issues related to reliance, which is central to their fraud, UCL, CLRA, and warranty claims, cannot be proved on a class-wide basis.

HARLEY-DAVIDSON'S SUPPLEMENTAL AUTHORITY IN SUPPORT OF OPPOSITION TO PLAINTIFFS' CLASS CERTIFICATION MOTION

DLA PIPER LLP (US)
LOS ANGELES

EAST\47759203.1

1    For the reasons set forth herein, as well as in Harley-Davidson's Opposition
2 to Plaintiffs' Motion for Class Certification, the Court should deny Plaintiffs'
3 Motion.
4
5 Dated: January 18, 2012                    DLA PIPER LLP (US)
6
                                             By: s/ Matthew D. Caplan
7                                                JEFFREY A. ROSENFELD
                                                 ANA TAGVORYAN
8                                                MATTHEW D. CAPLAN
                                                 Attorneys for Defendants
9                                                HARLEY-DAVIDSON MOTOR
                                                 COMPANY GROUP, LLC AND
10                                               HARLEY-DAVIDSON MOTOR
                                                 COMPANY, INC.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DLA PIPER LLP (US)
LOS ANGELES

HARLEY-DAVIDSON'S SUPPLEMENTAL AUTHORITY IN SUPPORT OF OPPOSITION TO PLAINTIFFS'
CLASS CERTIFICATION MOTION

EAST\47759203.1

# EXHIBIT A

--- F.3d ----, 2012 WL 89176 (C.A.9 (Cal.)), 12 Cal. Daily Op. Serv. 522
**(Cite as: 2012 WL 89176 (C.A.9 (Cal.)))**

H

Only the Westlaw citation is currently available.

United States Court of Appeals,
Ninth Circuit.
Michael MAZZA; Janet Mazza; Deep Kalsi,
Plaintiffs–Appellees,
v.
AMERICAN HONDA MOTOR COMPANY, INC.,
Defendant–Appellant.

No. 09–55376.
Argued and Submitted June 9, 2010.
Submission deferred Dec. 7, 2010.
Resubmitted June 22, 2011.
Filed Jan. 12, 2012.

**Background:** Putative class action complaint was filed alleging that automobile manufacturer misrepresented characteristics of braking system in automobile and stating causes of action under California Business and Professions Code sections prohibiting acts of unfair competition and false advertising, for unjust enrichment, and for violation of California's Consumer Legal Remedies Act (CLRA). The United States District Court for the Central District of California, Valerie Baker Fairbank, J., 254 F.R.D. 610, certified nationwide class of persons who purchased or leased automobiles. Manufacturer appealed.

**Holdings:** The Court of Appeals, Gould, Circuit Judge, held that:
(1) differences between California law and laws of other jurisdictions in which class members resided were "material";
(2) each class member's claim was governed by consumer protection laws of jurisdiction in which transaction took place; and
(3) common issues of fact did not predominate in nationwide class.

Vacated and remanded.

D.W. Nelson, Senior Circuit Judge, filed a dissenting opinion.

West Headnotes

**[1] Federal Civil Procedure 170A ⟅⟆0**

170A Federal Civil Procedure
Before certifying a class, the trial court must conduct a rigorous analysis to determine whether the party seeking certification has met the prerequisites of the rule governing class certification. Fed.Rules Civ.Proc.Rule 23, 28 U.S.C.A.

**[2] Federal Courts 170B ⟅⟆0**

170B Federal Courts
A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law.

**[3] Federal Civil Procedure 170A ⟅⟆0**

170A Federal Civil Procedure
Under California's choice of law rules, the class action proponent bears the initial burden to show that California has significant contact or significant aggregation of contacts to the claims of each class member; such a showing is necessary to ensure that application of California law is constitutional.

**[4] Federal Civil Procedure 170A ⟅⟆0**

170A Federal Civil Procedure
Under California's choice of law rules, once the class action proponent makes a showing that California has significant contact or significant aggregation of contacts to the claims of each class member, the burden shifts to the other side to demonstrate that foreign law, rather than California law, should apply to class claims.

**[5] Federal Civil Procedure 170A ⟅⟆0**

170A Federal Civil Procedure

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 89176 (C.A.9 (Cal.)), 12 Cal. Daily Op. Serv. 522
**(Cite as: 2012 WL 89176 (C.A.9 (Cal.)))**

California law may only be used on a classwide basis if the interests of other states are not found to outweigh California's interest in having its law applied.

**[6] Federal Civil Procedure 170A** ☞0

170A Federal Civil Procedure
To determine whether the interests of other states outweigh California's interest, for purposes of applying California law on a classwide basis, the court looks to a three-step governmental interest test: first, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different, second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists, and third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

**[7] Automobiles 48A** ☞0

48A Automobiles
Automobile manufacturer's settlement of unrelated nationwide class action which alleged claims under California law did not preclude manufacturer's argument that California law could not be applied to whole class in consumers' action alleging that manufacturer misrepresented characteristics of braking system in automobile; manufacturer settled with plaintiffs in prior case before an answer had been filed, and without addressing whether application of California law to a nationwide class was appropriate.

**[8] Federal Courts 170B** ☞0

170B Federal Courts
The fact that two or more states are involved does not itself indicate that there is a conflict of law problem; a problem only arises if differences in state law are material, that is, if they make a difference in the litigation.

**[9] Automobiles 48A** ☞0

48A Automobiles
Differences between California law and laws of other jurisdictions in which class members resided were "material," for purposes of determining whether California law could be applied to whole class in action alleging that automobile manufacturer misrepresented characteristics of braking system in automobile; California consumer protection laws had no scienter requirement, whereas many other states' consumer protection statutes required scienter, California required named class plaintiffs to demonstrate reliance, while some other states' consumer protection statutes did not, and remedies varied by state. West's C.R.S.A. § 6–1–105(1)(e), (g), (u); N.J.S.A. 56:8–2; West's Ann.Cal.Bus. & Prof.Code §§ 17200, 17500; West's Ann.Cal.Civ.Code § 1750.

**[10] Federal Courts 170B** ☞0

170B Federal Courts
It is a principle of federalism that each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders.

**[11] Federal Courts 170B** ☞0

170B Federal Courts
Every state has an interest in having its law applied to its resident claimants.

**[12] Federal Courts 170B** ☞0

170B Federal Courts
California law acknowledges that a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

**[13]** Federal Courts 170B ⬯0

170B Federal Courts

    In the federal system, states may permissibly differ on the extent to which they will tolerate a degree of lessened protection for consumers to create a more favorable business climate for the companies that the state seeks to attract to do business in the state.

**[14]** Federal Courts 170B ⬯0

170B Federal Courts

    Each state has an interest in being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future.

**[15]** Federal Courts 170B ⬯0

170B Federal Courts

    California's governmental interest test is designed to accommodate conflicting state policies, as a problem of allocating domains of law-making power in multi-state contexts; it is not intended to weigh the conflicting governmental interests in the sense of determining which conflicting law manifested the better or the worthier social policy on the specific issue.

**[16]** Federal Courts 170B ⬯0

170B Federal Courts

    Courts should not attempt to apply the laws of one state to behaviors that occurred in other jurisdictions.

**[17]** Automobiles 48A ⬯0

48A Automobiles

    In putative class action alleging that automobile manufacturer misrepresented characteristics of braking system in automobile, each class member's consumer protection claim was governed by consumer protection laws of jurisdiction in which

purchase or lease transaction took place; although consumers sought application of California law to entire class, communication of advertisements to consumers and their reliance thereon in purchasing automobiles took place in various foreign states, foreign states had strong interest in application of their laws to transactions between their citizens and corporations doing business within their state, and application of California law to entire class would impair foreign states' ability to calibrate liability to foster commerce.

**[18]** Federal Civil Procedure 170A ⬯0

170A Federal Civil Procedure

    No class may be certified that contains members lacking Article III standing. U.S.C.A. Const. Art. 3, § 2, cl. 1.

**[19]** Federal Courts 170B ⬯0

170B Federal Courts

    Standing requires that (1) the plaintiff suffered an injury in fact, (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision. U.S.C.A. Const. Art. 3, § 2, cl. 1.

**[20]** Federal Civil Procedure 170A ⬯0

170A Federal Civil Procedure

    Under California's Unfair Competition Law (UCL), restitution is available to absent class members without individualized proof of deception, reliance, or injury. West's Ann.Cal.Bus. & Prof.Code § 17200.

**[21]** Automobiles 48A ⬯0

48A Automobiles

    Consumers alleging that they were relieved of their money by automobile manufacturer's deceptive conduct suffered an "injury in fact," as required for class members' standing in action alleging that manufacturer misrepresented characteristics of braking system in automobile in violation of California consumer protection laws. West's

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

--- F.3d ----, 2012 WL 89176 (C.A.9 (Cal.)), 12 Cal. Daily Op. Serv. 522
**(Cite as: 2012 WL 89176 (C.A.9 (Cal.)))**

Ann.Cal.Bus. & Prof.Code §§ 17200, 17500; West's Ann.Cal.Civ.Code § 1750.

**[22] Automobiles 48A ☞0**

48A Automobiles

Automobile manufacturer's objection that California state law gave right to monetary relief to citizen suing under it without more particularized proof of injury and causation did not preclude class standing in action alleging that manufacturer misrepresented characteristics of braking system in automobile in violation of California consumer protection laws. West's Ann.Cal.Bus. & Prof.Code § 17200.

**[23] Automobiles 48A ☞0**

48A Automobiles

Common issues of fact did not predominate in nationwide class of all consumers who purchased or leased automobile with braking system, as required for certification of class in consumers' action against automobile manufacturer, alleging that manufacturer misrepresented characteristics of braking system in automobile in violation of California consumer protection laws; limited scope of allegedly misleading advertising made it unreasonable to assume that all class members viewed it and relied on it. West's Ann.Cal.Civ.Code § 1750; West's Ann.Cal.Bus. & Prof.Code §§ 17500, 17200 ; Fed.Rules Civ.Proc.Rule 23(a)(2), 28 U.S.C.A.

**[24] Federal Civil Procedure 170A ☞0**

170A Federal Civil Procedure

A presumption of reliance does not arise when class members were exposed to quite disparate information from various representatives of the defendant.

Roy Morse Brisbois, Eric Y. Kizirian, Lewis Brisbois Bisgaard & Smith LLP, Los Angeles, CA, Donald Manwell Falk, Mayer Brown, LLP, Palo Alto, CA, for the defendant-appellant.

Robert Ebert Byrnes, Payam Shahian, Glenn A.

Danas, Marc Primo, Initiative Legal Group APC, Los Angeles, CA, Michael Francis Ram, Ram, Olson, Cereghino & Kopczynski, LLP, San Francisco, CA, for the plaintiff-appellees.

Appeal from the United States District Court for the Central District of California, Valerie Baker Fairbank, District Judge, Presiding. D.C. No. 2:07–cv–07857–VBF–JTL.

Before DOROTHY W. NELSON and RONALD M. GOULD, Circuit Judges, and JAMES S. GWIN, District Judge.[FN*]

## OPINION

GOULD, Circuit Judge:

**\*1** Honda appeals the district court's decision to certify a nationwide class of all consumers who purchased or leased Acura RLs equipped with a Collision Mitigation Braking System ("CMBS") during a 3 year period under Federal Rule of Civil Procedure 23(b)(3). Plaintiffs allege that certain advertisements misrepresented the characteristics of the CMBS and omitted material information on its limitations. The complaint states four claims under California Law. Honda contends: (1) that Plaintiffs failed to satisfy Rule 23(a)(2)'s commonality requirement; (2) that common issues of law do not predominate because there are material differences between California law and the consumer protection laws of the 43 other jurisdictions in which class members purchased or leased their Acura RLs; (3) that common issues of fact do not predominate because resolution of these claims requires an individualized inquiry into whether consumers were exposed to, and actually relied on, various advertisements; and (4) that some members of the proposed class lack Article III standing because they were not injured.

We have jurisdiction pursuant to 28 U.S.C. § 1292, and we vacate the class certification order. We hold that the district court erred because it erroneously concluded that California law could be ap-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 89176 (C.A.9 (Cal.)), 12 Cal. Daily Op. Serv. 522
**(Cite as: 2012 WL 89176 (C.A.9 (Cal.)))**

plied to the entire nationwide class, and because it erroneously concluded that all consumers who purchased or lease the Acura RL can be presumed to have relied on defendant's advertisements, which allegedly were misleading and omitted material information.

**I**

The CMBS was part of an optional technology package for Honda's Acura RL vehicles released in 2005. Honda said that the CMBS detects the proximity of other vehicles, assesses the equipped car's speed, and implements a three-stage process of warning, braking, and stopping to minimize the damage from rear-end collisions. At Stage 1, the system sounds a tone and flashes a "BRAKE" warning sign on the dashboard. At Stage 2, the system also brakes lightly and tightens the driver's seat belt. At Stage 3, while continuing the other warnings, the system increases the braking force and tightens both the driver's and the front-end passenger's seat belts. Honda promoted the CMBS as a way to make rear-end collisions less common and to minimize the consequences of collision. The CMBS was sold as part of a technology package that also included adaptive cruise control and run-flat tires, and added $4,000 to the price of the car. To advertise the CMBS, Honda prepared marketing materials describing the system's functionality.

In 2006, Honda released a product brochure stating that the CMBS "is designed to help alert the driver of a pending collision or—if it's unavoidable—to reduce the severity of impact by automatically applying the brakes if an impending collision is detected." The brochure described the CMBS system's three-step process of alerting, lightly braking, and strongly braking if a crash is imminent:

**\*2** If the system senses a vehicle, it determines the distance and closing speed. If the closing speed goes above a programmed threshold, the system will immediately alert the driver with an audible alarm and a flashing indicator on the instrument panel. If the driver takes no action to reduce speed, the system will automatically tug at

the driver's seat belt and lightly apply the brakes. When the system senses that a frontal collision is unavoidable and the driver still takes no action, the front seat belts are retracted tightly and strong braking is applied automatically to lower impact speed and help reduce damage and the severity of injury.

The brochure showed a picture of an Acura behind a truck with three labels. Stage 1 was farthest from the truck and stated "RECOGNITION OF POSSIBLE COLLISION." Stage 2 was in the middle and stated "BELTS TIGHTEN AND LIGHT BRAKING." and Stage 3 was nearest the truck and stated "STRONG BRAKING." The 2007 and 2008 product brochures were similar and were available at dealerships.

Honda also released television commercials describing the system's operation. One ran for a week in November 2005 and another ran from February to September 2006. In the 2005 commercial, a voice states, "The driver is warned, and warned again. If necessary, the system even applies the brakes to lessen the potential impact." A voice in the 2006 commercial states, "The driver is warned so he can react. If necessary, the system would have even applied the brakes to lessen a potential impact."

From March to September 2006, Honda released a "What Might Happen" advertisement in some magazines. This advertisement said that "the system can react. It can give you auditory and visual warnings, a tug on the seat belt, and when necessary, even initiate strong braking." Honda ceased mass advertising for the CMBS in 2006.

However, Honda still pursued smaller-scale marketing efforts. Honda posted on its intranet two commercials stating that the CMBS's "various alert stages can overlap depending on the rate of closure of your vehicle and the vehicle ahead .... The system does have limitations, and will not detect all possible accident causing situations." These videos were viewable on kiosks at Acura dealerships, and

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 89176 (C.A.9 (Cal.)), 12 Cal. Daily Op. Serv. 522

**(Cite as: 2012 WL 89176 (C.A.9 (Cal.)))**

dealers were encouraged to show them to potential customers. The parties have not indicated how many people saw these videos, and Honda discontinued the use of intranet kiosks in March 2008. Honda also operated an "Owner Link" website that contained video clips describing the CMBS. Although this site was developed for car owners, the site was available to any customer via www.ahm-ownerlink.com until 2008 and via www.myacura.com thereafter. Also, Acura Style magazine, a periodical sent to Acura dealerships, subscribing Acura owners, and interested consumers twice each year, reported in a summer 2007 article that the CMBS responds "with any or all of three increasingly dramatic imperatives."

**\*3** Finally, the Acura RL owner's manual explained that the CMBS might shut off in certain conditions, including bad weather conditions, mountainous driving, driving with the parking brake applied, and when an abnormal tire condition is detected. The owner's manual stated that when this automatic shut off is triggered, a "CHECK CMBS SYSTEM" message appears in the instrument panel for five seconds to alert the driver that the system has turned off.

In 2007, Michael and Janet Mazza purchased a 2007 Acura RL from an authorized Acura dealership in Orlando, Florida. That same year, Deep Kalsi bought a 2007 Acura RL from an authorized Acura dealership in Gaithersburg, Maryland. Both vehicles were equipped with the CMBS System. In December 2007, the Mazzas and Kalsi filed a class action complaint against American Honda Motor Co., Inc. ("Honda") alleging that Honda misrepresented and concealed material information in connection with the marketing and sale of Acura RL vehicles equipped with the CMBS.

According to Plaintiffs, Honda did not warn consumers (1) that its CMBS collision avoidance system's three separate stages may overlap, (2) that the system may not warn drivers in time to avoid an accident, and (3) that it shuts off in bad weather. Appellees brought claims under California Law,

specifically the California Unfair Competition Law (UCL), Cal. Bus. & Prof.Code § 17200 et seq., False Advertising Law (FAL), Cal. Bus. & Prof.Code § 17500 et seq., the Consumer Legal Remedies Act (CLRA), Cal. Civil Code § 1750 et seq., and a claim for unjust enrichment.

On September 24, 2008, the district court denied Plaintiffs' motion for class certification without prejudice. The district court requested that the Plaintiffs provide clearer notice of the proposed class and subclasses, that Honda provide more detailed information regarding the propriety of applying out-of-state law, and that Plaintiffs clearly identify the alleged omissions and/or misrepresentations. On December 16, 2008, the district court granted Plaintiffs' renewed motion for class certification, finding that they met the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3). The district court certified a nationwide class of people in the United States who, between August 17, 2005 and the date of class certification, purchased or leased new or used Acura RL vehicles equipped with the CMBS.[FN1]

The district court held that the following common questions of law and fact satisfied Rule 23(a):

(1) whether Honda had a duty to Plaintiffs and the prospective class members to disclose that: the three stages of the CMBS System overlap; the CMBS will not warn drivers in time to avoid an accident; and that the CMBS shuts off in bad weather;

(2) whether Honda had exclusive knowledge of material facts regarding the CMBS System, facts not known to the Plaintiffs and the prospective class members before they purchased the RL equipped with the CMBS System;

(3) whether a reasonable consumer would find the omitted facts material; and

**\*4** (4) whether Honda's omissions were likely to deceive the public.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 89176 (C.A.9 (Cal.)), 12 Cal. Daily Op. Serv. 522

**(Cite as: 2012 WL 89176 (C.A.9 (Cal.)))**

The district court also held that common issues predominate and that California "as the forum state, has enough significant contact or aggregation of contacts to the claims asserted, given Defendants' contacts with the state, to ensure that the choice of California law is not arbitrary or unfair to nonresident class members." (citations omitted).

The district court concluded that California Law can be applied to all class members because Honda did not show how the differences in the laws of the various states are material, how other states have an interest in applying their laws in this case, and how these interests are implicated in this litigation. It also held that class members were entitled to an inference of reliance under California Law. It is these rulings that form the crux of the decisions material to class certification that are challenged on this appeal.

Honda sought permission to appeal immediately after the decision granting class certification. That request was granted. This case was initially argued and submitted for decision on June 9, 2010, but submission was deferred on December 7, 2010 pending the Supreme Court's decision in *Wal–Mart Stores, Inc. v. Dukes,* —— U.S. ——, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). Following the Supreme Court's *Wal–Mart* decision, this appeal was resubmitted on June 22, 2011, and our decision follows.

**II**

[1] "Before certifying a class, the trial court must conduct a 'rigorous analysis' to determine whether the party seeking certification has met the prerequisites of Rule 23." *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186, amended 273 F.3d 1266 (9th Cir.2001). The trial court's factual determinations will be reviewed for abuse of discretion so long as it remains within the framework of Rule 23. *Id.* When the trial court's application of the facts to the law "requires reference to the values that animate legal principles" we review that application de novo. *US v. Hinkson,* 585 F.3d 1247, 1259 (9th Cir.2009) (en banc).

The party seeking class certification has the burden of affirmatively demonstrating that the class meets the requirements of Federal Rule of Civil Procedure 23. *Wal–Mart,* 131 S.Ct. at 2551. Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality and adequacy of representation in order to maintain a class action. The district court concluded that Plaintiffs met their burden as to all four requirements. Honda only challenges the district court's finding of commonality under 23(a)(2).

The Supreme Court has recently emphasized that commonality requires that the class members' claims "depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Id.* The plaintiff must demonstrate "the capacity of classwide proceedings to generate common answers" to common questions of law or fact that are "apt to drive the resolution of the litigation." *Id.* (quoting Nagareda, *Class Certification in the Age of Aggregate Proof,* 84 N.Y.U.L.Rev. 97, 131–132 (2009)).

**\*5** Honda contends that the Plaintiffs did not meet their burden under *Wal–Mart* affirmatively to demonstrate that there is a common question of fact or law that can resolve important issues "in one stroke." Honda argues that the "crucial question" of "*which* buyers saw or heard *which* advertisements" is not susceptible to common resolution. It also asserts that a showing of a "greater propensity to purchase" is "the same type of abstract question of potential peripheral significance that the Court in *Dukes* held was not common" under Rule 23(a)(2). But commonality only requires a single significant question of law or fact. *Id.* at 2556. Even assuming arguendo that we were to agree with Honda's "crucial question" contention, the individualized issues raised go to preponderance under Rule 23(b)(3), not to whether there are common issues under Rule 23(a)(2). Honda does not challenge the district court's findings that common questions exist as to whether Honda had a duty to disclose or

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 8

--- F.3d ----, 2012 WL 89176 (C.A.9 (Cal.)), 12 Cal. Daily Op. Serv. 522

**(Cite as: 2012 WL 89176 (C.A.9 (Cal.)))**

whether the allegedly omitted facts were material and misleading to the public. We hold that the Plaintiffs satisfied their limited burden under Rule 23(a)(2) to show that there are "questions of law or fact common to the class."

## III

Under Rule 23(b)(3), a plaintiff must demonstrate the superiority of maintaining a class action and show "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. Pro. 23(b)(3). We have held that "there is clear justification for handling the dispute on a representative rather than an individual basis" if "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication...." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir.1998) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. & Proc.* § 1778 (2d ed.1986)).

Honda contends that common issues of law do not predominate because California's consumer protection statutes may not be applied to a nationwide class with members in 44 jurisdictions. It further contends that common issues of fact do not predominate because the court impermissibly relies on presumptions that all class members were exposed to the allegedly misleading advertising, that they relied on misleading information in making their purchasing decision, and that they were damaged as a result. We consider each argument in turn.

### A. Choice of Law

[2] Honda first argues that the district court erred by misapplying California's choice of law rules and certifying a nationwide class under California's consumer protection and unjust enrichment laws. "A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Zinser,* 253 F.3d at 1187. We review the district court's choice of law determination de novo, but "review factual findings underlying a choice of law determination pursuant

to the 'clearly erroneous' standard." *Id.*

*\*6* [3][4] Under California's choice of law rules, the class action proponent bears the initial burden to show that California has "significant contact or significant aggregation of contacts" to the claims of each class member. *Wash. Mut. Bank v. Superior Court,* 24 Cal.4th 906, 921, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (Cal.2001) (citations omitted). Such a showing is necessary to ensure that application of California law is constitutional. See *Allstate Ins. Co. v. Hauge,* 449 U.S. 302, 310–11, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981). Once the class action proponent makes this showing, the burden shifts to the other side to demonstrate "that foreign law, rather than California law, should apply to class claims." *Wash. Mut. Bank,* 24 Cal.4th at 921, 103 Cal.Rptr.2d 320, 15 P.3d 1071.

[5][6] California law may only be used on a classwide basis if "the interests of other states are not found to outweigh California's interest in having its law applied." *Id.* (citations omitted). To determine whether the interests of other states outweigh California's interest, the court looks to a three-step governmental interest test:

First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.

Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.

Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 89176 (C.A.9 (Cal.)), 12 Cal. Daily Op. Serv. 522

**(Cite as: 2012 WL 89176 (C.A.9 (Cal.)))**

more impaired if its law were not applied.

*McCann v. Foster Wheeler LLC,* 48 Cal.4th 68, 81–82, 105 Cal.Rptr.3d 378, 225 P.3d 516 (Cal.2010) (citations and quotations omitted).

[7] California has a constitutionally sufficient aggregation of contacts to the claims of each putative class member in this case because Honda's corporate headquarters, the advertising agency that produced the allegedly fraudulent misrepresentations, and one fifth of the proposed class members are located in California. *See Clothesrigger, Inc. v. GTE Corp.,* 191 Cal.App.3d 605, 236 Cal.Rptr. 605, 612–13 (Cal.Ct.App.1987). Honda does not dispute that there are sufficient contacts in this sense, but contends that the district court misapplied the three-step governmental interest test and erroneously concluded that California law could be applied to the whole class.[FN2] We agree, and hold that the district court abused its discretion in certifying a class under California law that contained class members who purchased or leased their car in different jurisdictions with materially different consumer protection laws.

**1) Conflict of Laws**

[8] "The fact that two or more states are involved does not itself indicate that there is a conflict of law problem." *See Wash. Mut. Bank,* 24 Cal.4th at 919, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (2001). A problem only arises if differences in state law are material, that is, if they make a difference in this litigation. *Id.* at 919–20, 103 Cal.Rptr.2d 320, 15 P.3d 1071; *See In re Complaint of Bankers Trust Co.,* 752 F.2d 874, 882 (3d Cir.1984) ("Any differences in [the states'] laws must have a significant effect on the outcome of the trial in order to present an actual conflict in terms of choice of law."). In its briefing, Honda exhaustively detailed the ways in which California law differs from the laws of the 43 other jurisdictions in which class members reside. The district court acknowledged that differences existed, but it found that Honda had not met its burden of demonstrating that any of these differences were material.

*7 [9] With respect for the district court's judgment, we are persuaded that at least some differences that Honda identifies are material. For example, the California laws at issue here have no scienter requirement, whereas many other states' consumer protection statutes do require scienter. *See, e.g.,* Colo.Rev.Stat. 6–1–105(1)(e), (g), (u) (knowingly); N.J. Stat. Ann. § 56:8–2 (knowledge and intent for omissions); *Debbs v. Chrysler Corp.,* 810 A.2d 137, 155 (Pa.Super.2002) (knowledge or reckless disregard).[FN3] California also requires named class plaintiffs to demonstrate reliance, while some other states' consumer protection statutes do not. *See, e.g., Egwuatu v. South Lubes, Inc.,* 976 So.2d 50, 53 (Fla.App.2008); *DaBosh v. Mercedes Benz USA, Inc.,* 378 N.J.Super. 105, 874 A.2d 1110, 1121 (N.J.Super.App.2005); *Stutman v. Chem. Bank,* 95 N.Y.2d 24, 709 N.Y.S.2d 892, 731 N.E.2d 608, 611–12 (N.Y.2000).

We conclude that these are not trivial or wholly immaterial differences. In cases where a defendant acted without scienter, a scienter requirement will spell the difference between the success and failure of a claim. In cases where a plaintiff did not rely on an alleged misrepresentation, the reliance requirement will spell the difference between the success and failure of the claim. Consumer protection laws are a creature of the state in which they are fashioned. They may impose or not impose liability depending on policy choices made by state legislatures or, if legislators left a gap or ambiguity, by state supreme courts.

Moreover, even once violation is established, there are also material differences in the remedies given by state laws. Under the CLRA, a plaintiff can recover actual damages (at least $1000), an injunction, restitution, punitive damages and "any other relief that the court deems proper," Cal Civ Code § 1780(a)(1)-(5), while a plaintiff can only recover restitution and injunctive relief under the UCL, Cal. Bus. & Prof.Code § 17203. The remedies permitted by other states vary and may depend on the wilfulness of the defendant's conduct. *E.g.,*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 89176 (C.A.9 (Cal.)), 12 Cal. Daily Op. Serv. 522

**(Cite as: 2012 WL 89176 (C.A.9 (Cal.)))**

Mich. Comp. Laws Ann. § 445.911(6) (limiting recovery to actual damages if the violation was a result of bona fide error); N.J. Stat. Ann. § 56:8–19 (requiring treble damages and attorney's fees). The elements necessary to establish a claim for unjust enrichment also vary materially from state to state. *See* Candace S. Kovacic, *A Proposal to Simplify Quantum Meruit Litigation,* 35 Am. U.L.Rev. 547, 558–60 (1986). Because some of the above differences are material we now move on to the test's second step.

**2) Interests of Foreign Jurisdictions**

[10][11][12] It is a principle of federalism that "each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders." *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 422, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003). "[E]very state has an interest in having its law applied to its resident claimants." *Zinser,* 253 F.3d at 1187. California law also acknowledges that "a jurisdiction ordinarily has "the predominant interest" in regulating conduct that occurs within its borders...." *McCann,* 48 Cal.4th at 97, 105 Cal.Rptr.3d 378, 225 P.3d 516 (citations omitted). The automobile sales at issue in this case took place within 44 different jurisdictions, and each state has a strong interest in applying its own consumer protection laws to those transactions.

**\*8** [13] In our federal system, states may permissibly differ on the extent to which they will tolerate a degree of lessened protection for consumers to create a more favorable business climate for the companies that the state seeks to attract to do business in the state. In concluding that no foreign state has "an interest in denying its citizens recovery under California's potentially more comprehensive consumer protection laws," the district court erred by discounting or not recognizing each state's valid interest in shielding out-of-state businesses from what the state may consider to be excessive litigation. As the California's Supreme Court recently reiterated, each state has an interest in setting the appropriate level of liability for companies conduct-

ing business within its territory. *McCann,* 48 Cal.4th at 91, 105 Cal.Rptr.3d 378, 225 P.3d 516.

Maximizing consumer and business welfare, and achieving the correct balance for society, does not inexorably favor greater consumer protection; instead, setting a baseline of corporate liability for consumer harm requires balancing the competing interests. *Cf. Holloway v. Bristol–Myers Corp.,* 485 F.2d 986, 997 (D.C.Cir.1973) (holding, in consumer false advertising class action, that there is no private right of action under the Federal Trade Commission Act, and rejecting protests that private enforcement was needed to achieve "meaningful consumer protection" because the Act is "the product of a legislative balance which took into account not only consumer protection but also interests of the businesses affected").

Getting the optimal balance between protecting consumers and attracting foreign businesses, with resulting increase in commerce and jobs, is not so much a policy decision committed to our federal appellate court, or to particular district courts within our circuit, as it is a decision properly to be made by the legislatures and courts of each state. More expansive consumer protection measures may mean more or greater commercial liability, which in turn may result in higher prices for consumers or a decrease in product availability. *See White v. Ford Motor Co.,* 312 F.3d 998, 1017–18 (9th Cir.2002) ("A national company sometimes limits its sales according to variations in risk"); Amy J. Schmitz, *Embracing Unconscionability's Safety Net Function,* 58 Ala. L.Rev. 73, 109 (2006) (arguing that broad consumer protection statutes may increase prices and decrease overall consumer welfare). As it is the various states of our union that may feel the impact of such effects, it is the policy makers within those states, within their legislatures and, at least in exceptional or occasional cases where there are gaps in legislation, within their state supreme courts, who are entitled to set the proper balance and boundaries between maintaining consumer protection, on the one hand, and encouraging an at-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 89176 (C.A.9 (Cal.)), 12 Cal. Daily Op. Serv. 522
**(Cite as: 2012 WL 89176 (C.A.9 (Cal.)))**

tractive business climate, on the other hand.

[14] Each of our states has an interest in balancing the range of products and prices offered to consumers with the legal protections afforded to them. Each of our states also has an interest in "being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future ." *McCann,* 48 Cal.4th at 97–98, 105 Cal.Rptr.3d 378, 225 P.3d 516. These interests are squarely implicated in this case.

**3) Which State Interest is Most Impaired**
**\*9** [15] California's governmental interest test is designed to "[accommodate] conflicting state policies, as a problem of allocating domains of lawmaking power in multi-state contexts. ..." *McCann,* 48 Cal.4th at 97, 105 Cal.Rptr.3d 378, 225 P.3d 516 . It is not intended to " 'weigh' the conflicting governmental interests in the sense of determining which conflicting law manifested the 'better' or the 'worthier' social policy on the specific issue...." *Id.* The test recognizes the importance of our most basic concepts of federalism, emphasizing the "the appropriate scope of conflicting state policies," not evaluating their underlying wisdom. *Id.*

[16] The importance of federalism when applying choice of law principles to class certification is reinforced by the Class Action Fairness Act of 2005. Pub.L. 109–2, 119 Stat. 4. A key purpose of the Act was to correct what former Acting Solicitor General Walter Dellinger labeled a wave of "false federalism." "[T]he problem is that many state courts faced with interstate class actions have undertaken to dictate the substantive laws of other states by applying their own laws to other states, resulting in a breach of federalism principles." S.Rep. No. 109–14, at 61 (2005) (quotation marks and ellipses omitted). Accordingly, "courts should not attempt to apply the laws of one state to behaviors that occurred in other jurisdictions." *Id.* at 62–63, 105 Cal.Rptr.3d 378, 225 P.3d 516

(summarizing Supreme Court cases).

[17] The district court did not adequately recognize that each foreign state has an interest in applying its law to transactions within its borders and that, if California law were applied to the entire class, foreign states would be impaired in their ability to calibrate liability to foster commerce. That this concept was missed or given inadequate weight was error. The district court's reasoning elevated all states' interests in consumer protection to a superordinate level, while ignoring or giving too little attention to each state's interest in promoting business. This presents a mode of analysis that the Class Action Fairness Act was aimed at stopping. *See* Findings, Class Action Fairness Act § 2(a)(4), Pub.L. No. 109–2, 119 Stat. 4, 5 (2005) (categorizing as an "abuse[ ]" of the class action system the practice of state courts "making judgments that impose their view of the law on other States and bind the rights of the residents of those States").

California recognizes that "with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest." *See Hernandez v. Burger,* 102 Cal.App.3d 795, 902, 162 Cal.Rptr. 564 (1980), *cited with approval by Abogados v. AT & T, Inc. .,* 223 F.3d 932, 935 (9th Cir.2000). California considers the "place of the wrong" to be the state where the last event necessary to make the actor liable occurred. *See McCann,* 48 Cal.4th at 94 n. 12, 105 Cal.Rptr.3d 378, 225 P.3d 516 (pointing out that the geographic location of an omission is the place of the transaction where it should have been disclosed); *Zinn v. Ex–Cell–O Corp.,* 148 Cal.App.2d 56, 80 n. 6, 306 P.2d 1017 (1957) (concluding in fraud case that the place of the wrong was the state where the misrepresentations were communicated to the plaintiffs, not the state where the intention to misrepresent was formed or where the misrepresented acts took place). Here, the last events necessary for liability as to the foreign class members—communication of the advertisements to the claimants and their reli-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 89176 (C.A.9 (Cal.)), 12 Cal. Daily Op. Serv. 522

**(Cite as: 2012 WL 89176 (C.A.9 (Cal.)))**

ance thereon in purchasing vehicles—took place in the various foreign states, not in California. These foreign states have a strong interest in the application of their laws to transactions between their citizens and corporations doing business within their state.

**\*10** Conversely, California's interest in applying its law to residents of foreign states is attenuated. *See Edgar v. MITE Corp.,* 457 U.S. 624, 644, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982) ("While protecting local investors is plainly a legitimate state objective, the State has no legitimate interest in protecting nonresident shareholders." (emphasis added)). Plaintiffs contend that California "is connected to both sides of the dispute," with interests both in protecting it citizens and in regulating Honda, a California corporation. We recognize that California has an interest in regulating those who do business within its state boundaries, and foreign companies located there, but we disagree with the dissent that applying California law to the claims of foreign residents concerning acts that took place in other states where cars were purchased or leased is necessary to achieve that interest in this case. We also note that Plaintiffs' argument that California law is the best choice for this nationwide class is based on a false premise that one state's law must be chosen to apply to all 44 jurisdictions.

Under the facts and circumstances of this case, we hold that each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place. Accordingly, we vacate the district court's class certification order and remand for further proceedings consistent with this opinion. We express no view whether on remand it would be correct to certify a smaller class containing only those who purchased or leased Acura RLs in California, or to certify a class with members more broadly but with subclasses for class members in different states, with different jury instruction for materially different bodies of state law. *See, e.g., In re Computer Memories Sec. Litig.,* 111 F.R.D. 675,

685–86 (N.D.Cal.1986).

**B) Predominance of Common Factual Questions**

Honda contends that common issues of fact do not predominate because this case necessarily involves an individualized determination as to whether class members were exposed to misleading advertisements and whether they relied on those advertisements in purchasing or leasing cars with a CMBS. Honda further argues that presuming common exposure and reliance sweep in class members who did not suffer an injury in fact, and thus do not meet Article III standing requirements. We hold that California class members have Article III standing but that the district court abused its discretion in finding that common issues of fact predominate because the small scale of the advertising campaign does not support a presumption of reliance.

**1) Standing**

[18][19][20] "[N]o class may be certified that contains members lacking Article III standing." *Denney v. Deutsche Bank AG,* 443 F.3d 253, 264 (2d Cir.2006). "[S]tanding requires that (1) the plaintiff suffered an injury in fact ... (2) the injury is fairly traceable to the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision." *Bates v. United Parcel Svc., Inc.,* 511 F.3d 974, 985 (9th Cir.2007) (quotations omitted). Under California's UCL, restitution is available to absent class members without individualized proof of deception, reliance, or injury. *In re Tobacco II Cases,* 46 Cal.4th 298, 320, 93 Cal.Rptr.3d 559, 207 P.3d 20 (Cal.2009). Honda contends that this means the class includes individuals who have no injury in fact, and therefore no Article III standing.

**\*11** [21][22] Plaintiffs contend that class members paid more for the CMBS than they otherwise would have paid, or bought it when they otherwise would not have done so, because Honda made deceptive claims and failed to disclose the system's limitations. To the extent that class members were relieved of their money by Honda's deceptive conduct—as Plaintiffs allege—they have suffered an

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 89176 (C.A.9 (Cal.)), 12 Cal. Daily Op. Serv. 522
**(Cite as: 2012 WL 89176 (C.A.9 (Cal.)))**

"injury in fact." *Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1021 (9th Cir.2011). Although it is not a simple or a clear cut matter, we conclude, in the light of our prior precedent, that Honda's objection "that state law gives a right to 'monetary relief to a citizen suing under it' without a more particularized proof of injury and causation ... is not enough to preclude class standing here." *Id.* (quoting *Cantrell v. City of Long Beach,* 241 F.3d 674, 684 (9th Cir.2001)).

**2) Reliance**

[23] While we reject Honda's contention that *Tobacco II* impermissibly allows a class to "include members who suffered no injury in fact" in violation of Article III, we agree with Honda's contention that the misrepresentations at issue here do not justify a presumption of reliance. This is so primarily because it is likely that many class members were never exposed to the allegedly misleading advertisements, insofar as advertising of the challenged system was very limited. *Davis–Miller v. Automobile Club of Southern California,* 201 Cal.App.4th 106, 125 (2011) ("An inference of classwide reliance cannot be made where there is no evidence that the allegedly false representations were uniformly made to all members of the proposed class."); *Cohen v. DirecTV, Inc.,* 178 Cal.App.4th 966, 980, 101 Cal.Rptr.3d 37 (2009) ("[California law does not] authorize an award ... on behalf of a consumer who was never exposed in any way to an allegedly wrongful business practice."). The district court found that an inference of reliance was appropriate, relying on *Massachusetts Mutual Life Insurance Co. v. Superior Court,* 97 Cal.App.4th 1282, 119 Cal.Rptr.2d 190 (Cal.App.4th.2002). In doing so, the court found it significant that Honda's advertisements were allegedly misleading because of the information they omitted, rather than the information they claimed, and that while the omitted information may have been available, there was no evidence that customers received it.

In *Mass. Mutual,* plaintiffs were allegedly in-

duced to buy "vanishing premium" life insurance policies through sales presentations that misrepresented the extent to which premiums would decrease over time by failing to disclose that Mass Mutual intended to "ratchet down" the discretionary dividends it paid to offset premium costs. *Id.* at 1286, 119 Cal.Rptr.2d 190. The California Court of Appeals found that an inference of reliance was proper under these facts, in part because the information "provided to prospective purchasers appears to have been broadly disseminated." *Id.* at 1294, 119 Cal.Rptr.2d 190. After the district court's decision, the California Supreme court reconfirmed that class members do not need to demonstrate individualized reliance, and that Proposition 64 imposes its reliance requirements only on the named plaintiff, not unnamed class members. *Tobacco II,* 46 Cal.4th at 324–27, 93 Cal.Rptr.3d 559, 207 P.3d 20. But *Tobacco II's* holding was in the context of a "decades-long" tobacco advertising campaign where there was little doubt that almost every class member had been exposed to defendants' misleading statements, and defendants were not just denying the truth but representing the opposite.

**\*12** [24] Honda's product brochures and TV commercials fall short of the "extensive and long-term [fraudulent] advertising campaign" at issue in *Tobacco II,* 46 Cal.4th at 328, 93 Cal.Rptr.3d 559, 207 P.3d 20, and this difference is meaningful. And while Honda might have been more elaborate and diligent in disclosing the limitations of the CMBS system, its advertising materials do not deny that limitations exist. A presumption of reliance does not arise when class members "were exposed to quite disparate information from various representatives of the defendant." *See Stearns,* 655 F.3d at 1020 (9th Cir.2011). California courts have recognized that *Tobacco II* does not allow "a consumer who was never exposed to an alleged false or misleading advertising ... campaign" to recover damages under California's UCL. *Pfizer Inc. v. Superior Court,* 182 Cal.App.4th 622, 632, 105 Cal.Rptr.3d 795 (Cal.Ct.App.2010); *Davis–Miller,* 201 Cal.App.4th at 124–25. For everyone in the class to

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 14

--- F.3d ----, 2012 WL 89176 (C.A.9 (Cal.)), 12 Cal. Daily Op. Serv. 522
**(Cite as: 2012 WL 89176 (C.A.9 (Cal.)))**

have been exposed to the omissions, as the dissent claims, it is necessary for everyone in the class to have viewed the allegedly misleading advertising. Here the limited scope of that advertising makes it unreasonable to assume that all class members viewed it. *Pfizer Inc.* 182 Cal.App.4th at 633–34, 105 Cal.Rptr.3d 795.

In the absence of the kind of massive advertising campaign at issue in *Tobacco II,* the relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading. The relevant class must also exclude those members who learned of the CMBS's allegedly omitted limitations before they purchased or leased the CMBS system. The district court certified a class that included all persons who purchased or leased an Acura RL with the CMBS between August 2005 and class certification. This class is overbroad. We vacate the class certification decision on this ground because common questions of fact do not predominate where an individualized case must be made for each member showing reliance.

**IV**

Because the law of multiple jurisdictions applies here to any nationwide class of purchasers or lessees of Acuras including a CMBS system, variances in state law overwhelm common issues and preclude predominance for a single nationwide class. And even if the class was restricted only to those who purchased or leased their car in California, common issues of fact would not predominate in the class as currently defined because it almost certainly includes members who were not exposed to, and therefore could not have relied on, Honda's allegedly misleading advertising material. We vacate the district court's class certification and remand for further proceedings consistent with this opinion. As we make clear above, we express no opinion whether a differently defined class may meet the requirements of Federal Rule of Civil Procedure 23(b)(3).[FN4]

**The Order Granting Plaintiffs' Renewed**

**Motion for Class Certification is VACATED and the matter is remanded for further proceedings consistent with this opinion.**

D.W. NELSON, Senior Circuit Judge, dissenting:

**\*13** I respectfully dissent. Because common factual and legal issues predominate, I would affirm the district court.

First, the majority holds that the facts do not justify a presumption of reliance. Majority Opinion at 207–210. I disagree. Both California's Consumer Legal Remedies Act and its Unfair Competition Law allow for a presumption of reliance. *Vasquez v. Superior Court,* 4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964, 973 n. 9 (Cal.1971); *In re Tobacco II Cases,* 46 Cal.4th 298, 93 Cal.Rptr.3d 559, 207 P.3d 20, 39–41 (Cal.2009). The district court concluded correctly that the focus of the inquiry should not be on which class members saw the advertisements and relied on them. Rather, the broadly disseminated advertisements omitted potentially material information about the limitations of the CMBS system. *Mass. Mut. Life Ins. v. Superior Court,* 97 Cal.App.4th 1282, 119 Cal.Rptr.2d 190, 198 (2002). Appellees allege that everyone in the class was exposed to those omissions. While the omitted information may have been available to consumers from other sources, Honda has not shown that consumers actually received the information prior to purchase. *Mass. Mut.,* 119 Cal.Rptr.2d at 198–99 (2002); *see also Occidental Land, Inc. v. Sup.Ct.,* 18 Cal.3d 355, 134 Cal.Rptr. 388, 556 P.2d 750, 754 (Cal.1976) ("[A]n inference of reliance arises if a material false representation was made to persons whose acts thereafter were consistent with reliance upon the representation."). Plaintiffs have alleged that the named plaintiffs and class members would not have paid for the CMBS system had Honda disclosed the omitted information. The district court correctly imputed reliance to the class.

Next, I concur with the majority that Honda has sufficient contacts with California to satisfy constitutional concerns. *All-state Ins. Co. v. Hague,* 449

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 89176 (C.A.9 (Cal.)), 12 Cal. Daily Op. Serv. 522
**(Cite as: 2012 WL 89176 (C.A.9 (Cal.)))**

U.S. 302, 310–11, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981); *Wershba v. Apple Computer, Inc.,* 91 Cal.App.4th 224, 110 Cal.Rptr.2d 145, 159 (Cal . Ct.App.2001). Honda, a California corporation, has made Torrance, California its principal place of business and its corporate headquarters for sales, marketing, research and development. Honda hired an advertising agency in Santa Monica, California to create print, radio and television ads for the CMBS system and an advertising agency in Culver City, California for its internet-based ads.

   I disagree, however, with the majority's choice of law analysis pursuant to California's three-step governmental interest test. *McCann v. Foster Wheeler LLC,* 48 Cal.4th 68, 105 Cal.Rptr.3d 378, 225 P.3d 516, 527 (Cal.2010). First, the majority concludes that material differences exist between California law and that of the 43 jurisdictions in which class members reside. Majority Opinion at 201–202. I find only one potentially material difference: Louisiana, Georgia, Mississippi, Kentucky, Virginia and Alabama prohibit class actions that allege unfair trade practices under state law. La.Rev.Stat. Ann. § 51:1409(A) (2008); Ga.Code Ann. § 10–1–399(a); Miss.Code Ann. § 75–24–15(4) (West 2007); *Arnold v. Microsoft Corp.,* No. 00 Cv. 123, 2001 WL 193765, at *6 (Ky.Cir.Ct. July 21, 2000); Va.Code Ann. § 59.1–204; Ala.Code § 8–19–10(f) (1981). Because California contemplates such class actions, I must consider next whether each of these states has an interest in applying its laws to this litigation. *Mc-Cann,* 105 Cal.Rptr.3d 378, 225 P.3d at 527. They do not.

   **\*14** The majority holds that applying California law to a nationwide class would discount each state's interest in achieving an optimal balance between consumer protection and business friendliness. Majority Opinion at 202–204. But pro-business legislation does not speak to the *specific* interest states have in imposing their laws on this litigation. Honda has not shown how a state's general interest in prohibiting class actions brought un-

der its own consumer protection laws translates into an interest in having its laws apply to *this* litigation. Unmistakably, California has a keen interest in deterring California corporations, with their principal places of business in California, from engaging in tortious conduct within the state. *Clothesrigger, Inc. v. GTE Corp.,* 191 Cal.App.3d 605, 236 Cal.Rptr. 605, 609 (Cal.Ct.App.1987) ( "California's interest in deterring fraudulent conduct by businesses headquartered within its borders and protecting consumers from fraudulent misrepresentations emanating from California would override any possible interest of any other state in application of its own laws to its residents' claims.").

   In assessing "which state's interests would be more impaired if its policy were subordinated to the policy of the other state," *Clothesrigger,* 236 Cal.Rptr. at 609, the majority concludes both that applying California law would impair foreign states' ability to foster commerce and that California has an attenuated interest in applying its law to nonresidents, Majority Opinion at 204–206. I strongly disagree. Each state with a material conflict has an interest in having its consumer protection laws apply to transactions taking place within that state's borders. However, California's interest would be most significantly impaired if its laws were not applied to this litigation. Honda is incorporated and headquartered in California; the advertisements at issue emanated from the state. California has a compelling interest in regulating the conduct of corporations operating within the state and availing themselves of the state's privileges. *Clothesrigger,* 236 Cal.Rptr. at 614; *Wershba,* 110 Cal.Rptr.2d at 159 (noting that California Business and Professions Code Section 17500 addresses deception of nonresident class members deceived by representations disseminated from California).

   Thus, California law should govern. In fact, California courts themselves have held that "a California court may properly apply the same California statutes at issue here to non-California members of a nationwide class where the defendant is a Califor-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 89176 (C.A.9 (Cal.)), 12 Cal. Daily Op. Serv. 522
**(Cite as: 2012 WL 89176 (C.A.9 (Cal.)))**

nia corporation and some or all of the challenged conduct emanates from California." *Wershba,* 110 Cal.Rptr.2d at 160; *see also Clothesrigger,* 236 Cal.Rptr. at 615–16 (applying California law to nationwide class).

The majority's holding will prove devastating to consumers. Individual claimants will not bring actions to recover the $4,000 paid for the CMBS systems. Even if consumers did pursue these claims, and even if these claims proved successful, they "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs" because "litigation costs would dwarf potential recovery." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1023 (9th Cir.1998). Without certification of a nationwide class to which California law applies, Honda becomes free to avail itself of the benefits offered by California without having to answer to allegations by consumers nationwide that it has violated the consumer protection laws of its forum state. This situation will allow corporations to take advantage of a forum state's hospitable business climate on the one hand, while simultaneously discounting the potential for litigation by nationwide consumers in response to a particular profit-motivated but harmful action on the other. If the harm to individual consumers is small enough to create a disincentive to individual litigation, and if a nationwide class action is not a potential consequence, corporations can choose increased revenues over the consumer with impunity. Thus, corporations like Honda will be able to act without accountability for past behavior and without a check on future profit-motivated actions that may risk consumer harm.

**\*15** The district court did not abuse its discretion in certifying a nationwide class to which California law applies. I respectfully dissent.

FN* The Honorable James S. Gwin, District Judge for the U.S. District Court for Northern Ohio, Cleveland, sitting by designation.

FN1. These class members purchased or leased their cars in 44 different states. Twelve states account for roughly 76% of class members: California accounts for 20%, Florida for 10%, and New York, Virginia, New Jersey, Texas, Pennsylvania, Washington, Illinois, Maryland, Massachusetts, and Ohio account for 3–6% each.

FN2. Plaintiffs contend that Honda's argument is precluded by their actions in *Browne v. American Honda Motor Corp., Inc.* (C.D. Cal. No. CV 2:09–6750), where Honda settled with plaintiffs bringing an unrelated nationwide class action which alleged CLRA and UCL claims under California law. This contention lacks merit. Honda settled with plaintiffs in that case before an answer had been filed, and without addressing whether the application of California law to a nationwide class is appropriate.

FN3. Appellees do not contest these differences in scienter and instead rely on California's permissive recovery for consumers to conclude, erroneously, that these differences are not relevant to this litigation.

FN4. A crucial difference between our views and those of the dissent concerns the importance of the individualized questions of law or fact over which any common questions must predominate. On reliance, the dissent gives inadequate weight to the fact that the Honda advertisements of the CMBS were limited in nature such that many class members were likely never exposed to them. On choice of law, the dissent gives inadequate weight to the differences in state consumer protection laws and the interests of each of our states in a federal system being able to have its own laws apply to purchases made by consumers within its borders. Finally, our opinion does not foreclose in an appropri-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.3d ----, 2012 WL 89176 (C.A.9 (Cal.)), 12 Cal. Daily Op. Serv. 522

**(Cite as: 2012 WL 89176 (C.A.9 (Cal.)))**

ate case the use of smaller statewide classes of those purchasing in a particular state, or the use of subclasses within a larger class.

C.A.9 (Cal.),2012.

Mazza v. American Honda Motor Co., Inc.

--- F.3d ----, 2012 WL 89176 (C.A.9 (Cal.)), 12 Cal. Daily Op. Serv. 522

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.